Zhen–Hua GAO, Plaintiff–Appellant,

v.

Carol A. JENIFER, District Director Immigration & Naturalization Service (Detroit District), Defendant–Appellee.

No. 98–1171.

United States Court of Appeals, Sixth Circuit.

Argued: March 16, 1999.

Decided and Filed: July 20, 1999.

Behzad Ghassemi (argued and briefed), Law Office of Behzad Ghassemi, Lansing, Michigan, for Plaintiff–Appellant.

W. Francesca Ferguson, Assistant U.S. Attorney, Office of the U.S. Attorney for the Western District of Michigan, Grand Rapids, Michigan, Marion E. Guyton (argued), Gretchen M. Wolfinger (briefed), U.S. Department of Justice, Office of Immigration Litigation, Civil Division, Washington, D.C., for Defendant–Appellee.

Before: BOGGS, CLAY, and GODBOLD,* Circuit Judges.

---

* The Honorable John C. Godbold, Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

## OPINION

BOGGS, Circuit Judge.

When he was sixteen years old, Zhen-Hua Gao entered the United States unaccompanied and without inspection. He was arrested by the United States Immigration and Naturalization Service ["INS"], which took him into custody and began deportation proceedings. The INS placed Gao in foster care detention with Lutheran Social Services of Michigan ("LSSM") pending the outcome of the deportation proceedings. LSSM petitioned the Ingham County, Michigan probate court to find Gao dependent and to declare that it would not be in Gao's best interest to be returned to China. The county court granted the petition and, based on the judgment, Gao petitioned the INS for Special Immigrant Juvenile ("SIJ") status. The INS district director denied the petition on the ground that the county court did not have jurisdiction to declare Gao dependent, because he was in the "legal custody" of the INS at the time. The Administrative Appeals Unit of the INS dismissed Gao's appeal, and he sued for declaratory relief in district court. The INS moved to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, and the district court granted the motion.

On appeal, the INS argues that the county court had no jurisdiction to declare Gao dependent and that he has not, therefore, satisfied the statutory requirements for SIJ status. The INS bases its argument on the Supremacy Clause and the doctrine of sovereign immunity. We hold that (1) the Supremacy Clause does not divest the county court of jurisdiction over juvenile aliens in INS custody; (2) the decision of the county court did not restrain the federal government from acting, in the sense necessary to violate sovereign immunity, where any restraint is the result of the federal government's own immigration rules operating on the factual predicate of the court's action; and (3) the Ingham County Probate Court had jurisdiction to act and, therefore, Gao was entitled to SIJ status. Accordingly, we reverse the judgment of the district court.

## I

Zhen-Hua Gao was born in the People's Republic of China on August 1, 1977. On February 14, 1994, he entered the United States illegally and unaccompanied. He was arrested by the INS and taken into custody, and on February 17, 1994, deportation proceedings were begun under what was then 8 U.S.C. § 1251(a)(1)(B), now codified at 8 U.S.C. § 1227(a)(1)(B). The INS placed Gao in the care of Lutheran Social Services of Michigan, a contract foster care provider paid by the INS. The contract between the INS and LSSM provides that "[t]hese minors, although released to the physical custody of [LSSM], shall remain in the legal custody of the INS."

On May 9, 1994, LSSM filed a petition for temporary wardship of Gao in the Ingham County (Michigan) Probate Court, Juvenile Division. On June 22, 1994, the Probate Court determined that Gao was a juvenile dependent on the Probate Court, that he was eligible for foster care, and that it would not be in his best interest to be returned to China. Gao was placed with a foster family by order of the Probate Court.

On September 15, 1994, Gao petitioned the INS for Special Immigrant Juvenile status[1] under section 101(a)(27)(J) of the Immigration and Naturalization Act ["INA"], 8 U.S.C. § 1101(a)(27)(J). On June 19, 1995, the INS district director denied the petition. On August 28, 1995, Gao was placed on a $5,000 immigration

---

1. Aliens with SIJ status may apply for permanent resident status under 8 U.S.C. § 1255, which provides that aliens paroled into the United States may so apply ("In applying this section to a special immigrant described in section 1101(a)(27)(K) of this title, such an immigrant shall be deemed, for purposes of subsection (a) of this section, to have been paroled into the United States."). *See infra* n. 3.

bond. On July 23, 1996, the Administrative Appeals Unit dismissed Gao's appeal. On January 29, 1997, Gao filed the present action in district court. The INS reopened the matter and, on May 14, 1997, again denied Gao's appeal. The INS moved to dismiss Gao's action under Fed.R.Civ.P. 12(b)(6). On December 22, 1997, the district court granted the government's motion and dismissed Gao's complaint. Gao appeals the decision of the district court. ·

## II

Dismissal under Rule 12(b)(6) is proper when, even taking all of plaintiff's alleged facts to be true, he can prove no set of facts that would entitle him to relief. *American Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 355 (6th Cir.1990). We review a district court's grant of a 12(b)(6) motion *de novo*. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.1990). In considering the motion, all factual allegations in the complaint are accepted as true. *Nishiyama v. Dickson County*, 814 F.2d 277, 279 (6th Cir.1987) (*en banc*).

To be entitled to relief, a plaintiff must allege facts sufficient to show that the INS's denial of his petition amounted to an abuse of discretion. *Gonzalez v. Immigration & Naturalization Serv.*, 996 F.2d 804, 808 (6th Cir.1993). The INS abused its discretion if its decision was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group. *Ibid.*

██ Federal authority over immigration matters is very broad. *Reno v. Flores*, 507 U.S. 292, 305, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ("[O]ver no conceivable subject is the legislative power of Congress more complete.") (quoting *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) (quoting *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339, 29 S.Ct. 671, 53 L.Ed. 1013 (1909))).

Until 1997, the INS defined a "special immigrant juvenile" as

an immigrant

(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State and who has been deemed eligible by that court for long-term foster care, and

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence

8 U.S.C. § 1101(a)(27)(J) (1995) (in relevant part).

Pub.L. 105–119, § 113, 111 Stat. 2440, signed into law on November 26, 1997, amended the definition to:

an immigrant who is present in the United States—

(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State and who has been deemed eligible by that court for long-term foster care due to abuse, neglect, or abandonment;

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) in whose case the Attorney General expressly consents to the dependency order serving as a precondition to the grant of special immigrant juvenile status; except that—

(I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the actual or constructive custody of the Attorney

General unless the Attorney General specifically consents to such jurisdiction.

. . . .

8 U.S.C. § 1101(a)(27)(J) (1999) (in relevant part).

■ Congress did not explicitly state its intent regarding the retroactive application of the 1997 amendment. Consequently, we apply the teaching of *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Because the threat of deportation, and the ability to avoid that threat, implicate private rights, and Congress did not explicitly dictate that the 1997 amendment should have retrospective application, we decide this case according to the law in effect at the time Gao sought SIJ status.

We note in passing that as a result of the 1997 amendment, Gao is in a limited and closed class of immigrants. Similarly situated immigrants whose state dependency cases arose after November 26, 1997 are governed by the amended rule. In those cases, the Attorney General must consent for the juvenile court to have jurisdiction, and must consent for any dependency order to have its pre-amendment effect.

## III

Gao contends that the Ingham County Probate Court order, which placed him in the temporary custody of the court and found that his best interest would not be served by returning him to China, satisfies the requirements for SIJ status. The INS argues that the Ingham County Probate Court lacked jurisdiction to declare Gao dependent, and that Gao's reliance on its order is, therefore, unavailing. The INS asserts two grounds for its claim: the doctrine of sovereign immunity, and the Supremacy Clause of the United States Constitution, U.S. CONST. Art. VI, cl.2, coupled with the text and structure of the INA.

Prior to the 1997 amendments to § 1101(a)(27)(J), the INS Office of the General Counsel issued several Legal Opinions stating that "[a]liens who are in INS custody are not eligible for special immigrant juvenile status." INS Legal Opinion, 73 INTERPRETER RELEASES 1148, April 23, 1996; INS Legal Opinion No. 97–6, May 30, 1997; *see also* INS Genco Opinion 95–11, CO 215.2 and 232.1, June 30, 1995.[2] The rationale for the opinions is the one argued before us—that state courts lack jurisdiction to make dependency determinations and to issue custody orders concerning illegal aliens in the "legal custody" of the INS and, therefore, that juveniles in INS custody cannot be found eligible for long-term foster care, as required by § 1101(a)(27)(J). *See ibid.* The Opinions also candidly admit that "[n]othing in the statute or the regulations explicitly excludes detained juvenile aliens from special immigrant status," Genco

2. Both of the former Opinions cite Genco Opinion 95–11, CO 215.2 and 232.1, for the quoted proposition. However, the summary conclusion in Genco Opinion 95–11, CO 215.2 and 232.1, states confusingly that "[t]he fact that a juvenile alien who is subject to deportation proceedings is detained by INS in foster care does not exclude him from eligibility for special immigrant status." *Id.* at Part II.B (emphasis added). The distinction being drawn is between aliens subject to exclusion, who never entered the United States, and aliens subject to deportation, who were apprehended in the United States. Gao is in the latter group. The former are not eligible for SIJ status under § 1101(a)(27)(J) because they are not *immigrants*. The latter are immigrants and, therefore, eligible for SIJ status *if* they have been adjudicated dependent and a court has found that it would not be in their best interest to return them to their home country. The INS's position in all three Opinions is that aliens in INS custody and subject to deportation are not eligible for SIJ status because no court has jurisdiction to declare them dependent. Thus, according to the INS's interpretation of § 1101(a)(27)(J), the only aliens capable of qualifying for SIJ status are those who were adjudicated dependent before being apprehended by the INS, or those in INS custody and subject to deportation who are formally "paroled" by the Attorney General into the custody of a welfare agency. *See* Legal Opinion No. 97–6 at Part III.A.

Opinion 95–11, CO 215.2 and 232.1, at Part III.B, and that "any alien who meets the definition of special immigrant juvenile contained in [INA] Section 101(a)(27)(J) is eligible to adjust his or her status [to permanent resident], no matter the manner of entry into the United States," INS Legal Opinion No. 97–6 at Part III.B.

Whether Gao is entitled to SIJ status depends entirely upon whether the Ingham County probate court had jurisdiction to declare him dependent. We hold that it did, notwithstanding the fact that he was in INS "legal custody" at the time. We begin from the premise that state juvenile courts generally have jurisdiction over immigrant juveniles within their territory, whether legally admitted into the United States or not. Section 1101(a)(27)(J), both as it exists now and as it existed before the 1997 amendments, explicitly recognizes—in fact, requires—attention to the judgments of state juvenile courts concerning the dependency, custody, and best interests of juvenile immigrants. *See also* Special Immigrant Status; Certain Immigrants Declared Dependent on a Juvenile Court, 58 Fed.Reg. 42,843 (Final rule Aug. 12, 1993). The pre-amendment statute makes no mention of any consent requirement, an omission that is explicitly addressed by the 1997 amendment. The question we must decide, then, is whether, under the pre-amendment statute, the fact that an immigrant is in INS "legal custody" deprives state courts of the jurisdiction they would otherwise have. We hold that it does not.

### A

■ " 'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.' " *Department of the Army v. Blue Fox, Inc.*, —— U.S. ——, ——, 119 S.Ct. 687, 690, 142 L.Ed.2d 718 (1999) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). "[A] waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign."

*Ibid.* (citing *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) and *Library of Congress v. Shaw*, 478 U.S. 310, 318, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986)). "Such a waiver must also be 'unequivocally expressed' in the statutory text." *Ibid.* (citing *Lane*, 518 U.S. at 192, 116 S.Ct. 2092). Sovereign immunity is jurisdictional in nature. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). "The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' " *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) (internal citations omitted) (quoting *Land v. Dollar*, 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947) and *Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 704, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); citing *Ex parte New York*, 256 U.S. 490, 502, 41 S.Ct. 588, 65 L.Ed. 1057 (1921)).

■ There is no statutory evidence that the United States waived its sovereign immunity with respect to custody suits brought by aliens in INS custody who are subject to deportation. Nor is there evidence that a judgment for Gao would "expend itself on the public treasury or domain." The question before us, therefore, is whether a judgment for Gao would "interfere with the public administration" or "restrain the government from acting." The government argues that if the state court is allowed to exercise jurisdiction over Gao the INS will be prevented from deporting him, which would be a restraint of government action. We disagree.

Granting Gao SIJ status does not, in itself, restrain or compel the government with respect to deportation. It merely makes him eligible for permanent resident status according to *the INS's own rules*. Furthermore, attaining SIJ status would only entitle Gao to *apply* for permanent status—the actual grant is both discretion-

ary and conditioned. *See* 8 U.S.C. § 1255(a).[3] It is the operation of INS rules that may prevent Gao's deportation, not the action of the county court. Therefore, allowing the county court to exercise jurisdiction over Gao neither interferes with the public administration nor restrains the government from acting, and sovereign immunity is not offended. The INS position leads to absurdity. For example, it would mean that if INS rules prevented deportation of a married illegal alien, state courts would violate sovereign immunity by licensing such a marriage.

### B

■ "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme law of the land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. Art. VI, cl. 2. "In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (citing *Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development Comm'n*, 461 U.S. 190, 204, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983)). State law is also preempted "if federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Ibid.* (quoting *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947))).

Section 1101(a)(27)(J), as it existed before the 1997 amendment, contained no express congressional command depriving state juvenile courts of their jurisdiction over immigrants in INS "legal custody." The INS argues both that the state court's jurisdiction over Gao actually conflicts with federal law and that the INA occupies the field of immigration, leaving no room for the states to supplement it. The primary premise upon which the government relies in both arguments is that allowing state court jurisdiction will prevent the INS from deporting Gao. As we held above, this condition, even if true, is of the INS's making, not the court's.

■ For the reason already given above, pp. 554–55, the state court's jurisdiction does not "actually conflict" with the INA. The state court judgment cannot, by itself, determine whether Gao will be deported. It merely classifies Gao for reasons extraneous to the INS's further proceedings. Therefore, state court jurisdiction cannot "actually conflict" with the INS's deportation of Gao. If the INS is ultimately prevented from deporting him, it will be because its own rules deem him non-deportable.

Similarly, although immigration is an area in which the federal government has wide discretion, the INA is not inhospitable to supplementation in the particular manner at issue here. In fact, according to INS rulemaking, the INA specifically delegates determinations of dependency, eligibility for long-term foster care, and the best interest of the child to state juvenile courts. *See* Special Immigrant Status; Certain Immigrants Declared Dependent on a Juvenile Court, 58 Fed.Reg. 42,843, 42,843–47 (Final rule Aug. 12, 1993). The INA *generally relies* on state courts, acting in their usual course. If the INS

---

**3.** "The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a). *See supra* n. 1.

wanted to remove the effects of such court decisions, it needed to have Congress say so, which Congress did in 1997.

Until 1997, Congress made no express command depriving state juvenile courts of their jurisdiction over immigrants in INS custody. Furthermore, allowing state courts to exercise jurisdiction over juvenile immigrants in the custody of the INS does not "actually conflict" with the INA. Finally, the INA does not occupy the field so as to preclude state court jurisdiction. Therefore, the text and structure of the INA before the 1997 amendments, together with the Supremacy Clause, do not preempt state court jurisdiction over Gao.

### IV

■■■ As we held above, the state juvenile court had jurisdiction to declare Gao dependent and to determine that sending him back to China would not be in his best interest. Nevertheless, the INS denied his petition for SIJ status. To be entitled to the grant of his petition, Gao must show that the INS's denial of his petition amounted to an abuse of discretion. *Gonzalez v. Immigration & Naturalization Serv.*, 996 F.2d 804, 808 (6th Cir.1993). The INS abused its discretion if its decision was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group. *Ibid.* If a statute "is silent or ambiguous with respect to [a] specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

When Gao filed his petition, the Act was silent regarding the jurisdiction of state juvenile courts over juvenile aliens in the legal custody of the INS. In other contexts, depriving state courts of jurisdiction has been held to require an express statement by Congress. *See, e.g., Tafflin v.*

*Levitt*, 493 U.S. 455, 460–61, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990) (RICO contains no "explicit statutory directive" divesting state courts of jurisdiction to hear RICO claims; therefore, state courts have jurisdiction absent an unmistakable implication from legislative history or a clear incompatibility between state-court jurisdiction and federal interests); *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990) (in order to to establish exclusive federal jurisdiction, Congress must affirmatively divest state courts of jurisdiction; Title VII does not so provide); *Holmes Fin. Assocs. v. Resolution Trust Corp.*, 33 F.3d 561, 565 (6th Cir.1994) (Congress must affirmatively divest state courts of their "presumptive competence" to hear cases arising under state law) (citing *Yellow Freight*).

■■■ Although these cases involve concurrent state and federal-court jurisdiction rather than the exclusive state-court jurisdiction at issue in the case before us, we hold that the principle applies here as well. To divest state juvenile courts of jurisdiction requires an explicit statutory directive. This explicit directive is what Congress added to § 1101(a)(27)(J) in 1997.

Furthermore, until the amendment was added, § 1101(a)(27)(J) did not purport to be a jurisdictional statute. Therefore, although it said nothing about state-court jurisdiction over juvenile aliens in the legal custody of the INS, there is no reason to think that Congress intended it to speak to that issue. We hold that construing pre-amendment § 1101(a)(27)(J) to include a jurisdictional restriction is a decision made without a rational explanation, which is an abuse of discretion.

■■■ Finally, construing pre-amendment § 1101(a)(27)(J) to divest state juvenile courts of jurisdiction over juveniles in INS custody is inconsistent with the INS's own policies. As we noted *supra*, pp. 553–54, the INS general counsel's own legal opinions state that "[n]othing in the statute

or the regulations explicitly excludes detained juvenile aliens from special immigrant status," and that "any alien who meets the definition of special immigrant juvenile contained in [INA] Section 101(a)(27)(J) is eligible to adjust his or her status [to permanent resident], no matter the manner of entry into the United States." The opinions also state that "[w]hen a juvenile detained in foster care files a dependency proceeding, INS should be involved in order to present its views opposing the proceeding." INS Genco Opinion 95–11, CO 215.2 and 232.1, June 30, 1995. These INS opinions specifically recognize the INS's lack of statutory authority under pre-amendment § 1101(a)(27)(J) to deprive state juvenile courts of jurisdiction over juveniles in INS custody. An agency's interpretation of a statutory provision that conflicts with the agency's earlier interpretation is entitled to less deference than a consistently-held agency interpretation. *See Immigration & Naturalization Service v. Cardoza–Fonseca*, 480 U.S. 421, 447 n. 30, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). In light of these INS interpretations, we hold that construing pre-amendment § 1101(a)(27)(J) to divest state juvenile courts of jurisdiction over juveniles in INS custody is a departure from the INS's policies, which is an abuse of discretion.

■ Although agency interpretations of federal statutes are generally entitled to deference, we hold that the INS's interpretation of pre-amendment § 1101(a)(27)(J) depriving state juvenile courts of jurisdiction over juveniles in INS custody is an abuse of discretion and is not entitled to deference.

## V

■ Finally, the government argues that the issue is moot because Gao is no longer a juvenile under the INA. "In general a case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (quoting *United States Parole Comm'n v.*

*Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969))). "[A] controversy is moot when a court cannot render an effective decree responsive to the complaint." *Caldwell v. Craighead*, 432 F.2d 213, 218 (citing *Singleton v. Board of Comm'rs of State Insts.*, 356 F.2d 771 (5th Cir.1966)). "A case ... is only moot if, assuming that the plaintiff receives the relief which he or she requests, such relief would no longer afford any meaningful legal benefit." *Smith v. Securities & Exch. Comm'n*, 129 F.3d 356, 362 n. 5 (6th Cir.1997).

This case is not moot because, by giving Gao what he has requested, namely SIJ status, he receives a meaningful legal benefit—the opportunity to apply to the INS to have his status adjusted to that of an alien lawfully admitted for permanent residence.

Accordingly, we REVERSE the judgment of the district court and REMAND the case with instructions to direct the INS to grant Gao's petition for SIJ status retroactively and to give full and proper consideration to his application, as a person with such status, to have his status adjusted to that of an alien lawfully admitted for permanent residence.