**DAYTON TECHNOLOGIES, INC. and Deceuninck Plastics Industries N.V., Plaintiff–Appellants,**

v.

**ALUMINUM COMPANY OF AMERICA, L. Richard Milner, and Joseph Tribendis, Defendants–Appellees.**

**No. 00–4475.**

United States Court of Appeals, Sixth Circuit.

March 19, 2002.

Before JONES and COLE, Circuit Judges; GWIN, District Judge.*

JONES, Circuit Judge.

Plaintiffs Dayton Technologies, Inc. ("Dayton Technologies") and Deceuninck Plastics Industries N.V. ("Deceuninck Plastics") appeal the district court's partial dismissal and summary judgment in defendants' favor. Plaintiffs' federal and state securities action alleges fraud, fraud and deceit, and misrepresentation regarding in Aluminum Company of America's ("AL-COA") February 1997 sale of the stock of Dayton Technologies to D–Q Acquisition Company ("D–Q Acquisition"). Deceuninck Plastics also brought suit against L. Richard Milner, ALCOA's Vice President of Corporate Development, and Joseph Tribendis, ALCOA's Manager of Corporate Development, in their individual capacities as controlling persons under § 20 of the Securities Exchange Act of 1934; against ALCOA for breach of contract; and, against ALCOA for specific performance of a purchase price adjustment provision in the Stock Purchase Agreement regarding the sale of Dayton Technologies to Deceuninck Plastics. The district court partially granted defendants' Motion to Dismiss and fully granted defendants' Motion for Summary Judgment. On appeal, plaintiffs contend that the district court erred in both its partial dismissal and grant of summary judgment. We affirm.

## I. Background

From July 1989 to September 1, 1996, the Stolle Corporation ("Stolle") was a wholly-owned subsidiary of ALCOA. AL-COA–Dayton, a vinyl window fabricator, was a division of Stolle. Caradco, Inc. ("Caradco"), a wooden window fabricator,

was also a division of Stolle. At that time, there also existed a vinyl window fabricator division directly within ALCOA, namely ALCOA Vinyl Windows ("AVW"). In the fall of 1996, ALCOA combined Caradco and AVW into a new operation, dropping the AVW name and simply calling the new venture "Caradco." On September 1, 1996, ALCOA incorporated the ALCOA–Dayton division as "Dayton Technologies, Inc.," making it a wholly-owned subsidiary. At that time, Milner was President of Caradco and sole director and President of Dayton Technologies, while Tribendis was the Vice President of Caradco.

In 1995, Alvensa Corporation ("Alvensa"), a Delaware corporation operating in Mexico, entered into an agreement with ALCOA to manufacture vinyl windows, using Dayton Technologies vinyl, to be distributed under the Caradco name. Alvensa became a major customer of Dayton Technologies, with purchases of approximately $1.4 million by 1996.

On October 9, 1996, ALCOA issued a press release announcing that Caradco was for sale. This announcement created uncertainty among Caradco's customers about the company's future ability to meet the demand for vinyl windows. While AL-COA was attempting to sell Caradco, it was also attempting to sell Dayton Technologies.

On November 7, 1996, Deceuninck Plastics and ALCOA entered into a non-binding Letter of Intent for the sale of 100 percent of the stock in Dayton Technologies to Deceuninck Plastics. The Letter of Intent provided that Deceuninck Plastics would pay a total purchase price of $70 million for all the outstanding shares of Dayton Technologies. The letter further

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

provided that Deceuninck Plastics would conduct such due diligence as it deemed reasonably necessary to confirm the financial, operating, and legal condition of Caradco, one of Dayton Technologies' largest customers and an important source of Dayton Technologies' future financial success. J.A. at 1399. Throughout this process, Deceuninck Plastics sought reassurance that Caradco, because of contractual obligations to Dayton Technologies, would continue its purchases from Dayton Technologies. In response to Deceuninck Plastics' inquiries about Caradco, ALCOA agreed to have Caradco enter into a Confidential Purchase Agreement ("the Caradco Agreement") with Dayton Technologies as part of the sale of Dayton Technologies to Deceuninck Plastics. The Letter of Intent further stipulated that neither party would be obligated to go forward and complete the transaction if Deceuninck Plastics and Caradco were unable to resolve their differences on or before 75 days from the date of signing the letter.

Prior to February 28, 1997, Alvensa sold its assets to Caradco. The sale included Alvensa's inventory of Dayton Technologies products.

On February 28, 1997, Deceuninck Plastics, through its wholly owned subsidiary, D–Q Acquisition, entered into a Stock Purchase Agreement ("Purchase Agreement") with ALCOA in which Deceuninck Plastics agreed to purchase 100 percent of the stock in Dayton Technologies. Additionally, on the same day, Caradco, by Tribendis, entered into the Caradco Agreement with D–Q Acquisition, in which Caradco agreed to purchase 100 percent of its requirements for its vinyl window and patio door business from D–Q Acquisition. In December 1997, D–Q Acquisition merged with Dayton Technologies, and called the newly-formed entity "Dayton Technologies."

In April 1997, ALCOA sold Caradco to Jeld–Wen, Inc. In July 1997, Jeld–Wen informed D–Q Acquisition that the business of its vinyl window division, the former Caradco, would be reduced by approximately 80 percent, thus significantly reducing the revenue D–Q Acquisition anticipated from the Caradco Agreement.

## II. District court proceedings

On May 20, 1998, plaintiffs brought an action against ALCOA alleging fraud, fraud and deceit, and negligent misrepresentation. Specifically, plaintiffs alleged that: Caradco represented, at defendants' direction, that Caradco's 1997 purchases would exceed its 1996 purchases; that defendants made those representations to mislead Deceuninck Plastics; that defendants did not disclose Caradco's inflated inventory prior to the consummation of the sale of Dayton Technologies to Deceuninck Plastics; and, that defendants knew or should have known that Caradco's purchases would not approach the $6.9 million sales figure represented by Caradco's and Alvensa's 1996 purchases from ALCOA–Dayton/Dayton Technologies.

Additionally, Deceuninck Plastics alleged a federal securities fraud violation and breach of contract against ALCOA and sought specific performance of all provisions of the Purchase Agreement by Milner and Tribendis. Specifically, Deceuninck Plastics alleged that ALCOA refused to make a purchase price adjustment or to employ an accountant to resolve an outstanding dispute concerning a promissory note from the Alvensa sale ("the Alvensa Note"), both of which were required by the Purchase Agreement.

On August 10, 1998, defendants filed a motion to dismiss all claims. On December 14, 1998, plaintiffs filed a Motion for Leave to File an Amended Complaint to clarify their specific performance claim against ALCOA. On that day, the district court granted plaintiffs' Motion for Leave to File, but fully or partially dismissed all of plaintiffs' claims, except the breach of contract and specific performance claims.

Specifically, the district court dismissed, in part, the federal securities fraud claims and common law fraud claim. The district court held that Deceuninck Plastics could not have justifiably relied upon the alleged representations regarding future sales from Dayton Technologies to Caradco. The court stated that Deceuninck Plastics admittedly knew that Caradco would be sold shortly after Deceuninck Plastics' purchase of Dayton Technologies and that Deceuninck Plastics had negotiated the terms of the Caradco Agreement in which Caradco only agreed to purchase 100 percent *of its requirements* from Dayton Technologies, not a minimum guaranteed level of purchases as plaintiffs contended. J.A. at 342. The district court fully dismissed the negligent misrepresentation claim due to the existence of the integration clauses, § 4.23 of the Purchase Agreement and § 14.06 of the Caradco Agreement, which provided that the Purchase Agreement and the Caradco Agreement were fully integrated agreements and that plaintiffs had relied upon no other representations or warranties other than those set forth in those documents. J.A. at 346.

On April 22, 1999, plaintiffs filed a Motion to Compel Arbitration on the purchase price adjustment issue of their specific performance claim. On June 29, 1999, the district court denied plaintiffs' Motion to Compel, stating that the threshold legal and contractual issue for the court, separate from any issue regarding arbitration, was whether the clear and unambiguous language of the Stock Purchase Agreement called for a purchase price adjustment in connection with the Alvensa Note. The district court determined that the plain language of the Purchase Agreement excluded the Alvensa Note from the sale of Dayton Technologies and, thus, no purchase price adjustment was required. J.A. at 355–56.

On November 24, 1999, plaintiffs filed a Motion to File a Second Amended Complaint. On January 14, 2000, the district court denied plaintiffs' motion, with an invitation to re-file, because plaintiffs had misrepresented to the court the basis of that motion in their Memorandum in Support. Plaintiffs chose not to re-file the motion or further amend their Complaint.

On August 15, 2000, Dayton Technologies filed a Motion for Partial Summary Judgment on the accounting issue of the specific performance claim. In response, defendants filed a Motion for Summary Judgment on all remaining claims. On October 30, 2000, the district court granted summary judgment to defendants and denied plaintiff's cross-motion for partial summary judgment.

On appeal, plaintiffs challenge the district court's partial dismissal of its claims and grant of summary judgment to the defendants.

### III. Discussion

We review a district court's grant of a motion to dismiss *de novo*. *See Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 744 (6th Cir.1992) (per curiam). In considering the motion, we must accept all factual allegations in the Complaint as true. *See Gao v. Jenifer*, 185 F.3d 548,

552 (6th Cir.1999) (citing *Nishiyama v. Dickson County*, 814 F.2d 277, 279 (6th Cir.1987) (en banc)). In addition, we review a district court's grant of summary judgment *de novo*. *See Terry Barr Sales Agency, Inc. v. All–Lock Co.*, 96 F.3d 174, 178 (6th Cir.1996).

After reviewing the record under the relevant standards, we conclude that the district court correctly stated the relevant principles of law and properly applied them to the facts of this case.[1] No purpose would be served by discussing again the issues presented. Thus, the partial dismissal and summary judgment were properly granted.

### IV. Conclusion

We affirm on the basis of the district court opinion.

---

1. We do, however, note that in deciding the defendants' motion to dismiss, the district court failed to consider (and presumably failed to apply) the heightened pleading standard that federal securities law violations and fraud claims mandate. J.A. at 331 (setting forth only the general standard of review under Rule 12(b)(6) of the Federal Rules of Civil Procedure).

Plaintiffs must plead fraud with particularity. *See* FED. R. CIV. P. 9(b) ("[I]n all averments of fraud and mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). Heightened pleading standards also apply in the context

of federal securities law violations. *See Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir.2001) (applying Rule 9(b)'s heightened pleading standards in the context of federal securities law).

Applying this heightened standard of pleading to the instant case, however, does not change its outcome. Rather, it supports the conclusion that the district court properly dismissed the plaintiffs' complaint.

