OPINION OF THE COURT
John M. Hunt, J.
I
Mario S., the respondent in this juvenile delinquency proceeding commenced under article 3 of the Family Court Act, has requested that this court issue an order pursuant to 8 USC § 1101 (a) (27) (J) finding him eligible for “special immigrant juvenile” (SIJ) status. For the reasons which follow, the court finds that Mario S. satisfies the statutory criteria for a determination that he is eligible for SIJ status, and this order constitutes an “eligibility order” for any application which he may file for SIJ status with federal immigration authorities.[1] A
By petition filed pursuant to Family Court Act § 310.1 (1) on December 16, 2009, it was alleged that Mario S. (born Mar. 1, 1994) is a juvenile delinquent within the meaning of Family Court Act § 301.2.[2] The juvenile delinquency petition alleged that respondent committed acts which, were he an adult, would constitute the crimes of criminal mischief, defacement of property, and possession of graffiti instruments. The petition further alleged that respondent was born on March 1, 1994; that he resides in Astoria, New York; and that he resides with his mother, Irma V
*446 Following preliminary proceedings upon the petition, the respondent entered an admission that he committed an act which would constitute the misdemeanor of possession of graffiti instruments (Penal Law § 145.65) in satisfaction of the entire petition (Family Ct Act § 321.2 [3]). The court then proceeded to a dispositional hearing at the conclusion of which respondent was adjudicated to be a juvenile delinquent (Family Ct Act § 352.1 [1]), and he was placed on probation for a period of 12 months upon specific conditions which included his participation with Esperanza, a community-based supervision program; his regular attendance at school; the completion of 80 hours of community service; random screening and negative test results for alcohol, marijuana, and controlled substances; adherence to a daily curfew; and no further arrests for criminal or delinquent behavior (Family Ct Act §§ 352.2 [1] [b]; 353.2).
A petition alleging that respondent violated the conditions of the order of probation was filed by the Department of Probation on August 4, 2010 (Family Ct Act § 360.2). Respondent denied the allegations in the petition and a hearing was conducted in accordance with Family Court Act § 360.3. At the conclusion of the hearing the court found that the evidence established that respondent had violated the conditions of his probation by failing to report to meetings with his probation officer, that he failed to cooperate with the Esperanza program, that he failed to attend school regularly and was truant, and that he failed to obey his mother’s lawful commands and had been away from home without her permission. A further dispositional hearing was conducted and, at the conclusion thereof, the court revoked the prior order of probation and entered a new order of disposition (Family Ct Act § 360.3 [6]). The new order of disposition placed respondent in the custody of the New York State Office of Children and Family Services (OCFS) for a period of 12 months with the further directive that OCFS place respondent in the physical custody of Lincoln Hall, an authorized agency, for confinement and treatment (Family Ct Act §§ 360.3 [6]; 352.2 [1] [c]; 353.3 [4]; see Matter of Robert J., 2 NY3d 339, 343 [2004]; Matter of Vito G.L., 27 AD3d 471 [2006]).
B
Respondent through his court appointed attorney (Family Ct Act § 249 [a]), in conjunction with counsel from The Door’s Legal Services Center, who are assisting him with immigration issues, requests that this court make “special findings” of fact which will
*447 “enable him to petition the United States [Citizenship] and Immigration Services (USCIS) for Special Immigrant Juvenile Status pursuant to Immigration and Nationality Act 8 U.S.C. § 1101 (a) (27) (J) (2010), as amended by Pub. L. No. 110-457, 122 Stat. 5044 (effective March 23, 2009) and 8 C.F.R. § 204.11 (2008).”
More specifically, Mario S. requests that the court find that he is an unmarried person less than 21 years of age; that he is dependent upon the Family Court by virtue of the juvenile delinquency proceeding which resulted in his placement in state custody; that reunification with at least one of his parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law; and that it is not in his best interests to return to Mexico, his country of birth.
In support of the application for the requested “special findings,” counsel for the respondent assert that he was born in Mexico to Irma V and Mario S., Sr., on March 1, 1994,[3] and that “[w]hen Mario [Jr.] was about six months old, his mother brought him to the United States to live with his father, who had come to the US in early 1993. Mario’s parents separated in 2004, after which Mario and his siblings remained with their mother in Astoria, Queens.” Respondent further asserts that his father has not supported him or his siblings since his parents separated in 2004, and that his father has made no substantial effort to maintain a relationship with him. In addition, “[i]n 2008 . . . Mario went to live with his father in Corona, Queens. After Mario had lived there for about three months, his father was arrested on charges related to domestic violence for slapping his girlfriend. Mario’s father was subsequently deported” and Mario, Jr., returned to his mother’s home where he resided when the underlying juvenile delinquency proceeding was filed in 2009.
Respondent’s mother, Irma V, has submitted an affidavit in support of the motion. The mother’s affidavit states, in pertinent part, that she and her son Mario came to the United States in October 1994 to live with her husband, the father of respondent and his siblings, when Mario, Jr., was six months *448 old. She and her husband separated in “late 2004” and respondent and her other children remained in her care. “In 2008, Mario and his sister Teresita went to live with their father in Corona, Queens [and a]fter Mario had lived there for about three months, his father was deported. This occurred after the woman he [the father] was living with called the police during an argument.” Ms. V. further states that respondent “has received no financial support from his father and is rarely in contact with him; they probably speak three or four times a year. He does not seem to care whether he is a part of Mario’s life.”
Also appended to the motion are a letter from a social worker at Lincoln Hall, the authorized agency which provided services and treatment to respondent during the period of his court-ordered placement, and an affidavit from the respondent. The social worker’s statement provides that respondent “made fair progress during his stay at Lincoln Hall,” including anger management, effective communication with his family, effective decision making, and positive peer interactions. Respondent “passed every class” and has excelled academically. At the time of his scheduled release from Lincoln Hall, the plan was for respondent to return to his mother’s home where he would receive “aftercare” services through OCFS in the community. In his own affidavit, Mario S. states that
“I am currently not in contact with my Dad. I called him around my birthday this year [2011], but I can’t remember the last time we talked before that. He has not tried to maintain a relationship with me since he was deported. He has sent our family no money or gifts, and I don’t think he has ever tried to call me.”
Respondent further states that he departed Mexico when he was an infant; that he does not have complete fluency in the Spanish language in that while he can converse in Spanish, he “is not good at reading it”; and that were he to return to Mexico, “I don’t know what I would do for work and I’m not sure where I would live.”
II
“Federal law provides a path to lawful permanent residency in the United States to resident alien children who qualify for ‘special immigrant juvenile’ (SIJ) status” (In re J.J.X.C., 318 Ga App 420, 424, 734 SE2d 120, 123 [2012]). “SIJ status allows a ju-
*449 venile immigrant to remain in the United States and seek lawful permanent resident status if federal authorities conclude that [certain] statutory conditions are met” (In re Erick M., 284 Neb 340, 341, 820 NW2d 639, 641 [2012]; see also Gao v Jenifer, 185 F3d 548, 557 [6th Cir 1999]; M.B. v Quarantillo, 301 F3d 109, 114 [3d Cir 2002]).
“The SIJ provisions of the [Immigration and Nationality Act] were enacted in 1990 to protect abused, neglected, or abandoned children who, with their families, illegally entered the United States. Congress provided an alternative to deportation for these children. Rather than being deported along with abusive or neglectful parents, or deported to parents who had abandoned them once in the United States, such children may seek special status to remain in the United States” (Yeboah v United States Dept. of Justice, 345 F3d 216, 221 [3d Cir 2003]).
“A minor who obtains SIJ status may become a naturalized United States citizen after five years” (In re Y.M., 207 Cal App 4th 892, 915, 144 Cal Rptr 3d 54, 71-72 [4th Dist 2012]; see also Zheng v Pogash, 416 F Supp 2d 550, 554 [SD Tex 2006]; B.F. v Superior Ct., 207 Cal App 4th 621, 626, 143 Cal Rptr 3d 730, 733 [2d Dist 2012]).
The creation of the special immigrant juvenile classification “show[s] a congressional intent to assist a limited group of abused children to remain safely in the country with a means to apply for [lawful permanent resident] status” (Garcia v Holder, 659 F3d 1261, 1271 [9th Cir 2011]), and the conferring of SIJ status upon a qualifying juvenile therefore serves as “a gateway to lawful permanent residency in the United States” (Matter of Trudy-Ann W. v Joan W., 73 AD3d 793, 795 [2010]; see also Matter of Jisun L. v Young Sun P., 75 AD3d 510, 511 [2010]; Matter of Alamgir A., 81 AD3d 937, 939 [2011]).
As enacted in 1990, “[t]he original eligibility requirements were a judicial or administrative order determining only that the juvenile alien was dependent on a juvenile court and that it would not be in the juvenile’s best interest to be returned to the juvenile’s or parent’s home country” (Erick M., 284 Neb at 347, 820 NW2d at 645; see also Gao at 552; M.B. at 114). However, because abuses of the SIJ provisions were discovered after their enactment in 1990, primarily the use of SIJ as a method “of obtaining legal permanent resident status, rather than for the purpose of obtaining relief from abuse or neglect” (Erick M., *450 284 Neb at 347, 820 NW2d at 645; see also Yeboah at 221; M.B. at 114), Congress has amended the SIJ provisions of the immigration statute twice since their enactment (Pub L 105-119, 111 US Stat 2440, 2460 [105th Cong, 1st Sess, Nov. 26, 1997] [termed the “Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998”], amending 8 USC § 1101 [a] [27] [J]; Pub L 110-457, 122 US Stat 5044 [110th Cong, 2d Sess, Dec. 23, 2008] [termed the “William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008”], amending 8 USC § 1101 [a] [27] [J]).
“In 1997 . . . Congress amended § 1101(a) (27) (J) to require that a court, in its order, determine that the juvenile (1) is eligible for long-term foster care due to abuse, neglect, or abandonment and (2) has been declared a dependent of a juvenile court or committed or placed with a state agency” (Erick M., 284 Neb at 347, 820 NW2d at 645 [internal quotation marks omitted]; see also Yeboah at 221-222).
“Under the 2008 amendment, the eligibility requirements under [8 USC § 1101 (a) (27) (J) (i)] hinge primarily on a reunification determination. The amendment expanded eligibility to include juvenile immigrants whom a court has committed to or placed in the custody of an individual or a state-appointed entity — not just those whom a court has committed to or placed with a state agency or department. In addition, Congress removed the requirement that the juvenile be under the court’s jurisdiction because of abuse, neglect, or abandonment. Finally, Congress removed the requirement that a state juvenile court find that a juvenile is eligible for long-term foster care because of abuse, neglect, or abandonment. Instead, a court must find that reunification is not possible because of abuse, neglect, or abandonment” (Erick M., 284 Neb at 346, 820 NW2d at 645).
Accordingly, under the current SIJ provisions enacted in 2008, in order
“[t]o be eligible to petition the federal government for SIJ status, the resident alien must be under age 21 and unmarried. The child must have been declared dependent upon a state juvenile court . . . [a]nd the juvenile court must have made two additional findings: (1) that reunification with 1 or *451 both of the immigrant’s parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; and (2) that it would not be in the alien’s best interest to be returned to the alien’s or parent’s previous country of nationality or country of last habitual residence” (J.J.X.C., 318 Ga App at 424, 734 SE2d at 123 [internal quotation marks and citations omitted]; see also Y.M., 207 Cal App 4th at 915, 144 Cal Rptr 3d at 72; Erick M., 284 Neb at 346-347, 820 NW2d at 645; B.F., 207 Cal App 4th at 626, 143 Cal Rptr 3d at 733; Trudy-Ann W. at 795; Matter of Emma M., 74 AD3d 968, 969 [2010]; Jisun L. at 511; Alamgir A. at 939; Matter of Sing W.C. [Sing Y.C. — Wai M.C.], 83 AD3d 84, 86-87 [2011]; Matter of Mohamed B., 83 AD3d 829, 830-831 [2011]).
A
While the federal government has exclusive jurisdiction with respect to immigration (Fiallo v Bell, 430 US 787, 792 [1977]; United States v Hernandez-Guerrero, 147 F3d 1075, 1076 [9th Cir 1998]; Rohit v Holder, 670 F3d 1085, 1087 [9th Cir 2012]; Y.M., 207 Cal App 4th at 908, 144 Cal Rptr 3d at 66), including the final determination whether an alien child will be granted permanent status as an SIJ (e.g. Gao at 556; J.J.X.C., 318 Ga App at 424-425, 734 SE2d at 123; Erick M., 284 Neb at 341, 820 NW2d at 641), state juvenile courts play an important and indispensable role in the SIJ application process.
Under 8 USC § 1101 (a) (27) (J) and 8 CFR 204.11 (c), state juvenile courts are charged with making a preliminary determination of the child’s dependency and his or her best interests, which is a prerequisite to an application to adjust status as a special immigrant juvenile. “The SIJ statute affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child’s best interests” (J.J.X.C., 318 Ga App at 425, 734 SE2d at 124 [citation omitted]; see also In re Adoption of Peggy, 436 Mass 690, 699, 767 NE2d 29, 37 [2002], cert denied sub nom. S.T. v Massachusetts Dept. of Social Servs., 537 US 1020 [2002]; In re Juvenile 2002-098, 148 NH 743, 748, 813 A2d 1197, 1201 [2002]; Y.M., 207 Cal App 4th at 908, 144 Cal Rptr 3d at 66; B.F., 207 Cal App 4th at 629-630, 143 Cal Rptr 3d at 735-736).
B
At the relevant time in this case, Mario had been residing with his mother in New York City when his mother sent Mario *452 and one of his sisters to reside with his father and the father’s girlfriend elsewhere in Queens County. While Mario resided with his father and the father’s girlfriend, the father was apparently arrested for domestic violence, and that arrest and possible criminal proceedings, unrelated to Mario’s case, ultimately resulted in the father’s deportation to Mexico. Mario returned to his mother’s home and he resided with his mother when he was arrested for the acts underlying this juvenile delinquency proceeding. This court adjudicated Mario to be a juvenile delinquent and he was initially placed under the supervision of the New York City Department of Probation.
Thereafter, the court revoked Mario’s probation after judicial proceedings which resulted in a determination that he had failed to cooperate with the Department of Probation and with Esperanza, a community-based treatment program to which he had been referred. Upon further proceedings, the court then placed Mario in the custody of the State Office of Children and Family Services for a period of one year. Mario was placed with Lincoln Hall for treatment and confinement, and he was ultimately discharged to his mother upon the expiration of the period of placement on August 25, 2011. This motion for SIJ findings was filed on July 11, 2011, a time when Mario was still subject to the placement order which was issued by the court.
According to Mario and his mother, he has had no direct contact with his father since his father’s arrest and subsequent deportation to Mexico. Since that time, he has resided either with his mother or at Lincoln Hall, and his mother and OCFS have provided for his well-being and needs. Mario’s father has not provided financial or emotional support for the child or other members of the family, and the father has apparently expressed little concern for Mario’s well-being or his future.
i
Under New York law, a youth who has been adjudicated to be a juvenile delinquent and who is placed in the custody of OCFS or the custody of an authorized agency is defined as a “dependent child” (Social Services Law § 371 [7]),[4] as well as a “foster *453 child” for certain purposes (Social Services Law § 383-c [l]).[5] Juvenile delinquents who have been placed in the custody of OCFS or of an authorized agency are subject to permanency hearings, which serve the same purpose as permanency hearings held in the cases of abused or neglected children and person in need of supervision (PINS) juveniles (Family Ct Act §§ 355.5, 756-a, 1089; see e.g. Matter of Robin G., 20 Misc 3d 328 [2008]). Additionally, the provisions of Social Services Law § 384-b, which provide for the involuntary termination of parental rights, are potentially applicable to juvenile delinquents who are placed in the custody of OCFS, a local department of social services, or an authorized agency (Family Ct Act § 355.5 [7] [d] [ii]).
Accordingly, because Mario had been placed by the court in the care of OCFS which placed him in the care of Lincoln Hall, an authorized agency, Mario was a dependent child during the pendency of the placement order, including the period of conditional release where he remained under OCFS supervision (Executive Law §§ 507-a, 510-a). Mario was also in state custody at the time he filed this SIJ motion.
For purposes of 8 USC § 1101 (a) (27) (J) and 8 CFR 204.11 (c), the court finds that Mario is under age 21, and that he is unmarried. While the current provisions of 8 USC § 1101 (a) (27) (J) no longer require a judicial determination that the minor is eligible for long-term foster care due to abuse, neglect, or abandonment (Erick M., 284 Neb at 346, 820 NW2d at 645), it is noted that at the time the motion was filed and granted, the juvenile was a dependent child under New York law as he was a juvenile delinquent placed in the legal custody of a state agency and was under the continuing jurisdiction of the Family Court (8 CFR 204.11 [c] [3], [5]).
ii
This court must also determine whether respondent’s reunification with one or both of his parents is not viable due to parental abuse, neglect, or abandonment, or a similar basis found under state law (8 USC § 1101 [a] [27] [J] [i]). While Mario resided with his mother, Irma V, at the time he was placed in state custody, and he has returned to her custody *454 upon discharge by OCFS, this court finds that respondent’s father has abandoned him under New York law (Social Services Law § 384-b [4] [b]; Domestic Relations Law § 111 [2] [a]; see Matter of Julius P., 63 NY2d 477, 481 [1984]; Matter of Gabrielle HH., 1 NY3d 549, 550 [2003]; Matter of Jamal B. [Johnny B.], 95 AD3d 1614, 1616 [2012], Iv denied 19 NY3d 812 [2012]). The determination that Mario has been abandoned by his father prevents and makes inappropriate the reunification of the child with his father, who was deported to Mexico in 2008 (Social Services Law § 384-b [4] [b]; Domestic Relations Law § 111 [2] [a]; see Matter of Julius P., 63 NY2d 477, 481 [1984]; Matter of Gabrielle HH., 1 NY3d 549, 550 [2003]; Matter of Jamal B. [Johnny B.], 95 AD3d 1614, 1616 [2012], Iv denied 19 NY3d 812 [2012]).[6]
Respondent clearly resided with his mother and siblings at the time that the Family Court obtained jurisdiction over him by reason of the juvenile delinquency proceeding, and his permanency plan (now effected) was to return to his mother’s custody and home. The relevant portion of the statute provides that it must be shown that the child’s “reunification with 1 or both of the immigrant’s parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law” (8 USC § 1101 [a] [27] [J] [i]). Although respondent was able to be returned to the custody of his mother upon his discharge from agency custody and the jurisdiction of the Family Court, he was both dependent upon the Family Court and abandoned by his biological father at the time of the motion. The fact that respondent was returned to the care of his mother should not be determinative of his application for SIJ findings. The information presented to this court suggests that respondent’s mother is also present in the United States illegally and she is therefore at risk of deportation, which would make her unavailable to continue to care for Mario and his siblings.
As the court has determined that Mario’s reunification with his father is not possible and, in fact, is contraindicated by the fact that the father has abandoned the child, and his reunification with his mother is tenuous given her apparent immigration *455 status, this court further finds that it would not be in Mario’s best interest to be returned to Mexico. Mario was brought to the United States from Mexico when he was six months old, and he has resided in New York with his immediate family for his entire life. Aside from his father, who has abandoned him, there is no information that there are other blood relatives in Mexico ready, willing, and able to care for Mario were he to be returned there, nor any indication how the child would complete his education or earn a living in Mexico. While a citizen of Mexico by birth, Mario would indeed be a stranger in a foreign land were he to be forced to return there.
This court therefore grants Mario’s motion for the findings necessary to enable him to make application to the USCIS for an adjustment of his status as a special immigrant juvenile.
iii
This court would be remiss in not setting forth why it declines to follow the recent opinion of the Supreme Court of Nebraska in Erick M. which, were it binding upon this court, would require that Mario’s application for special findings be denied.
Under the Nebraska Supreme Court’s interpretation of the SIJ provisions of the immigration statute, Mario would be unable to meet the reunification component under 8 USC § 1101 (a) (27) (J) (Erick M., 284 Neb at 343, 820 NW2d at 643). In the view of the Supreme Court, which was grounded upon its interpretation of administrative decisions made by the USCIS, the administrative agency “does not consider proof of one absent parent to be the end of its inquiry under the reunification component[ and a] petitioner must normally show that reunification with the other parent is also not feasible” (Erick M., 284 Neb at 350, 820 NW2d at 647). Thus, “if a juvenile lives with only one parent when a juvenile court enters a guardianship or dependency order, the reunification component under § 1101(a)(27)(J) is not satisfied if a petitioner fails to show that it is not feasible to return the juvenile to the parent who had custody” (id.).
The function of the juvenile court in deciding an application for special findings which would permit a juvenile to file an application for adjustment of status as a special immigrant juvenile is limited in scope. The juvenile court is simply called upon to determine whether, under state law, the juvenile is under the age of 21, unmarried, and dependent upon the court through an order of placement or other court order; whether reunification with one or both of the juvenile’s parents is not possible due to *456 abuse, neglect, or abandonment of the child; and whether it would be contrary to the juvenile’s best interest to be returned to his or her previous country of nationality.
The statute and regulation commit these specific and limited issues to state juvenile courts. The juvenile court need not determine any other issues, such as what the motivation of the juvenile in making application for the required findings might be (In re T.J., 59 So 3d 1187, 1191 [Fla Dist Ct App 2011]; F.L.M. v Department of Children & Families, State of Fla., 912 So 2d 1264, 1269 [Fla Dist Ct App 2005]; L.T. v Department of Children & Families, 48 So 3d 928, 931 [Fla Dist Ct App 2010]); whether allowing a particular child to remain in the United States might someday pose some unknown threat to public safety (e.g. Shannon M. Ray, Note, The Breakdown of a System: The Consequences of Permitting Dangerous Illegal Juvenile Aliens to Reside in Your Community, 56 Wayne L Rev 819 [2010]); and whether the USCIS, the federal administrative agency charged with enforcing the immigration laws, may or may not grant a particular application for adjustment of status as an SIJ.[7]
Whether or not a juvenile’s application constitutes a potential abuse or misuse of the SIJ provisions of the immigration law is an issue to be determined by the USCIS. That issue is beyond the scope of what a state juvenile court is required to decide upon a motion for special findings which are a prerequisite to the filing of an application to adjust the juvenile alien’s immigration status. Nothing in 8 USC § 1101 (a) (27) (J) or the regulation indicates that the Congress intended that state juvenile courts prescreen potential SIJ applications for possible abuse on behalf of the USCIS.
As the court’s duty in this case is limited to a determination of the specific issues outlined above (J.J.X.C., 318 Ga App at 424-425, 734 SE2d at 123), and the court has made the findings necessary to enable the respondent to file an application for permanent legal residence as an SIJ, this court expresses no further opinion with respect to any application which might be filed with the USCIS by Mario.
This constitutes the decision and opinion of the court which serves to supplement the previously issued order granting the *457 motion for SIJ findings. Respondent is specifically authorized to present this decision containing specific findings to USCIS in connection with any application which he has filed or he may file in accordance with 8 USC § 1101 (a) (27) (J).

. Respondent’s motion was granted in summary form by order dated September 13, 2011, effective August 24, 2011. At the time that the motion was filed by respondent, July 11, 2011, he was still subject to the placement order issued by this court on August 25, 2010.

. A juvenile delinquent is
“a person over seven and less than sixteen years of age, who, having committed an act that would constitute a crime if committed by an adult, (a) is not criminally responsible for such conduct by reason of infancy, or (b) is the defendant in an action ordered removed from a criminal court to the family court pursuant to article [725] of the criminal procedure law” (Family Ct Act § 301.2 [1]; see generally Matter of Raymond G., 93 NY2d 531, 535-536 [1999]).

. A copy of respondent’s birth certificate is appended to the motion along with a translation. The certificate states that Mario S. was born in Tlapanalá, Puebla, Mexico, on March 1, 1994 to Mario S.C. and Irma VP, both of whom are citizens of Mexico. The certificate further recites that all four of the respondent’s grandparents are also citizens of Mexico.

. Social Services Law § 371 (7) defines a “dependent child” as “a child who is in the custody of, or wholly or partly maintained by an authorized agency or an institution, society or other organization of charitable, eleemosynary, correctional, or reformatory character.”

. For purposes of a judicial surrender of parental rights to effect a transfer of a child’s guardianship and custody and to facilitate the child’s eventual adoption, “a child in foster care shall mean a child in the care and custody of an authorized agency pursuant to section [384-a] of this title or article three, seven or ten of the family court act” (Social Services Law § 383-c [1]).

. A child’s abandonment by his or her parent is a ground upon which the parent’s rights of guardianship and custody of the child may be permanently terminated by the State (Social Services Law § 384-b [4] [b]), as well as a basis to dispense with the parent’s right to withhold his or her consent to the child’s adoption (Domestic Relations Law § 111 [2] [a]; Matter of Corey L v Martin L, 45 NY2d 383, 389-390 [1978]; Matter of Joshua II., 296 AD2d 646, 647 [2002], Iv denied 98 NY2d 613 [2002]; Matter of Alyssa A. [Michelle N.— Sandra N.], 79 AD3d 740, 742 [2010], Iv denied 16 NY3d 704 [2011]).

. Where the USCIS denies a juvenile alien’s application for legal permanent residence as a special immigrant juvenile, the remedy is to seek review of the agency’s decision in federal court (M.B. at 113; Yeboah at 221; Gao at 551).