[969 NYS2d 150]

In the Matter of HEI TING C., Appellant. (Proceeding No. 1.)

In the Matter of WAI C., Appellant. (Proceeding No. 2.)

Second Department, July 17, 2013

**APPEARANCES OF COUNSEL**

*Baker & Hostetler LLP*, New York City (*Timothy S. Pfeifer, Seanna R. Brown* and *Jacqlyn R. Rovine* of counsel), for appellants.

**OPINION OF THE COURT**

COHEN, J.

The assumption of responsibility for serving the best interests of a child by providing protection and guidance to a child appearing before the court goes to the very core of our legal system. Indeed, children have long enjoyed the benefit of their own assigned counsel in custody proceedings. We require our courts to review and approve settlements of infants' claims. We have a long-established juvenile system of justice that is specifically designed to protect and rehabilitate delinquent children. However, it was only fairly recently that some notion of distinguishing the status of children from that of adults was addressed in our immigration laws. Taking effect in 2009, a form of immigration status known as special immigrant juvenile status is now offered to a class of undocumented immigrant

children, providing them with a gateway to lawful permanent residency in the United States. Before a child can petition the United States Citizenship and Immigration Services for special immigrant juvenile status, a state court must first acquire jurisdiction and make certain declarations with respect to the child. On this appeal, we are asked to determine whether the Family Court, after issuing a support order in a related child support proceeding, properly denied the petitions of a sister and brother for the issuance of orders declaring each of them to be dependent on the Family Court, and making the specific findings required to enable them to petition the United States Citizenship and Immigration Services for special immigrant juvenile status pursuant to 8 USC § 1101 (a) (27) (J).

Specifically at issue in this case is whether a child becomes dependent on a juvenile court within the meaning of the federal statute when one of the child's parents files a petition for child support upon which the Family Court enters an order of support. Although several decisions of this Court and the Appellate Division, First Department, have addressed the questions of whether a guardianship petition and an adoption proceeding satisfy the dependency prong for special findings relative to special immigrant juvenile status, answering both questions in the affirmative (*see Matter of Ashley W. [Verdele F.]*, 85 AD3d 807 [2011]; *Matter of Mohamed B.*, 83 AD3d 829 [2011]; *Matter of Sing W.C. [Sing Y.C.—Wai M.C.]*, 83 AD3d 84 [2011]; *Matter of Alamgir A.*, 81 AD3d 937 [2011]; *Matter of Jisun L. v Young Sun P.*, 75 AD3d 510 [2010]; *Matter of Emma M.*, 74 AD3d 968 [2010]; *Matter of Trudy-Ann W. v Joan W.*, 73 AD3d 793 [2010]; *Matter of Antowa McD.*, 50 AD3d 507 [2008]), no appellate decisions in this state have addressed the question of whether an order issued by the Family Court that does not award or affect the custody of a child satisfies the dependency prong. For the reasons set forth below, we hold that a child support order does not satisfy the requirement for special immigrant juvenile status that a child be "dependent on a juvenile court" (8 USC § 1101 [a] [27] [J] [i]).

## Background

In 1990, Congress created special immigrant juvenile status (hereinafter SIJS) to address the issue of undocumented and unaccompanied children. These children, who lack a lawful immigration status, endure the continual threat of deportation, cannot work legally, and are constantly vulnerable to exploitation. As originally enacted, this legislation defined an eligible

immigrant as being one who "has been declared dependent on a juvenile court located in the United States and has been deemed eligible by that court for long-term foster care" (Immigration Act of 1990, Pub L 101-649, tit I, § 153 [a], 104 US Stat 4978, 5005, adding 8 USC § 1101 [a] [27] [J] [i]). It also required a determination by the court that it would not be in the immigrant's best interests to return to his or her native country (*see* Immigration Act of 1990, Pub L 101-649, tit I, § 153 [a], 104 US Stat 4978, 5005-5006, adding 8 USC § 1101 [a] [27] [J] [ii]). In 1997, Congress added the further requirement that the juvenile court find the child dependent upon the court "due to abuse, neglect, or abandonment" (Pub L 105-119, tit I, § 113, 111 US Stat 2440, 2460, amending 8 USC § 1101 [a] [27] [J] [i]) which limited the beneficiaries of the provision "to those juveniles for whom it was created" (143 Cong Rec H10809-01, H10815, H10844 [Nov. 13, 1997]).

In 2008, Congress again amended the SIJS provision. In the "William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008," Congress expanded the definition of who qualified as a "special immigrant juvenile," enabling more children to qualify for the status (Pub L 110-457, 122 US Stat 5044 [Dec. 23, 2008]). The amendments removed the requirement that the immigrant child had to be deemed eligible for long-term foster care due to abuse, neglect, or abandonment, and replaced it with a requirement that the juvenile court find that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law" (Pub L 110-457, tit II, § 235 [d] [1], 122 US Stat 5079 [Dec. 23, 2008], amending 8 USC § 1101 [a] [27] [J] [i]). The amendments also expanded eligibility to include, in addition to children declared dependent on a juvenile court, those who had been placed in the custody of "an individual or entity appointed by a State or juvenile court" (*id.*). Following the 2008 amendments, the United States Department of Homeland Security issued a memorandum explaining, inter alia, that the new language added to the definition of "Special Immigrant Juvenile" meant that "a petition filed by an alien on whose behalf a juvenile court appointed a guardian may now be eligible" (Memorandum by Donald Neufeld and Pearl Chang, *Trafficking Victims Protection Reauthorization Act of 2008: Special Immigrant Juvenile Status Provisions* [Mar. 24, 2009]).

Pursuant to the 2008 amendments, a "special immigrant" is a resident alien who is under 21 years old, is unmarried, and

has been either "declared dependent on a juvenile court" or legally committed to the custody of an individual appointed by a state or juvenile court (*see* 8 USC § 1101 [a] [27] [J] [i]; 8 CFR 204.11). Additionally, for a juvenile to qualify for SIJS, a court must find that reunification of the juvenile with one or both of the juvenile's parents is not viable due to parental "abuse, neglect, abandonment, or a similar basis found under State law," and that it would not be in the juvenile's best interests to be returned to his or her previous country of nationality or country of last habitual residence (8 USC § 1101 [a] [27] [J] [i]). "Under federal law, a person who is granted [SIJS] is able to achieve lawful permanent residency in the United States without first obtaining a visa" (*Matter of Sing W.C. [Sing Y.C.–Wai M.C.]*, 83 AD3d at 86).

The enactment of the SIJS provision demonstrates Congress's intent to provide special protection to children who have experienced maltreatment in their families (*see* Wendi J. Adelson, *The Case of the Eroding Special Immigration Juvenile Status*, 18 J Transnat'l L & Pol'y 65, 67 [Fall 2008]). The provision employs a unique hybrid procedure that directs the collaboration of state and federal systems, "recognizing that juvenile courts have particularized training and expertise in the area of child welfare and abuse," which places them in the best position to make determinations on the best interests of the child and potential for family reunification (David B. Thronson, *Kids Will Be Kids? Reconsidering Conceptions of Children's Rights Underlying Immigration Law*, 63 Ohio St LJ 979, 1005 [2002]). However, it is the federal government that still retains control over the final immigration determination (*see id.* at 1007).

In New York, a child may request that the Family Court, recognized as a juvenile court (*see* 8 CFR 204.11 [a]), issue an order making special findings and a declaration so that he or she may petition the United States Citizenship and Immigration Services for SIJS (*see e.g. Matter of Jisun L. v Young Sun P.*, 75 AD3d 510 [2010]). Specifically, the findings of fact must establish that: (1) the child is under 21 years of age; (2) the child is unmarried; (3) the child is dependent upon a juvenile court or legally committed to an individual appointed by a state or juvenile court; (4) reunification with one or both parents is not viable due to abuse, neglect, abandonment, or a similar basis; and (5) it is not in the child's best interests to be returned to his or her home country (*see* 8 USC § 1101 [a] [27] [J] [ii]; 8

CFR 204.11 [c]). With the declaration and special findings, the eligible child may then seek the consent of the Department of Homeland Security for SIJS (*see* 8 USC § 1101 [a] [27] [J] [iii]).

This case involves Hei Ting C. and Wai C., a sister and brother who were born in Hong Kong. Their parents were divorced in Hong Kong in 2006, and the father and Wai moved to New York in the summer of 2008. Although the father was awarded full custody of the children, Hei Ting remained in Hong Kong with her mother until she finished the school year. Her mother refused to care for her, and Hei Ting alleges that she had to support herself using a credit card provided to her by her father. After completing the school year, Hei Ting relocated to New York to join her father and brother. Hei Ting and Wai currently live in Queens with their father, and both children remain unmarried.

Both Hei Ting and Wai describe their mother as physically and verbally abusive. Although their mother also subsequently relocated to New York, they live exclusively with their father and have little or no contact with her. They have received no emotional or voluntary financial support from their mother.

The father filed a petition pursuant to Family Court Act article 4 in the Family Court, seeking a support order on consent. In December 2011, the Family Court entered the requested support order on consent. Hei Ting and Wai then filed a joint motion, within the support proceeding, for the issuance of special findings necessary for them to obtain SIJS, arguing that the existence of a support order made them dependent upon the Family Court. At the time the motion was filed, they were both under the age of 21 and contended that reunification with their mother was not viable, as she was physically and emotionally abusive toward them. They also argued that it would not be in their best interests to return to Hong Kong, since their father, who is their source of care and support, is in the United States, and their return would remove them from further educational opportunities. There would also be no adults to take care of them in Hong Kong. In two orders dated December 20, 2011, made after a hearing, the Family Court, in effect, converted the motion to separate petitions for the issuance of special findings, and denied the petitions. In two orders dated January 4, 2012, made, in effect, upon reargument, the Family Court adhered to its original determinations. Hei Ting and Wai now appeal.

Analysis

In determining whether a child becomes "dependent on a juvenile court" for SIJS purposes when a child support order is entered, this Court must examine the facts of each particular case.

While the appellants make well-reasoned arguments for allowing orders directing child support payments to satisfy the requirement for SIJS that a child be "dependent on a juvenile court" (8 USC § 1101 [a] [27] [J] [i]), this Court declines to adopt that position. As discussed above, the impetus behind the enactment of the SIJS scheme is to protect a child who is abused, abandoned, or neglected and to provide him or her with an expedited immigration process. The requirement that a child be dependent upon the juvenile court or, alternatively, committed to the custody of an individual appointed by a state or juvenile court, ensures that the process is not employed inappropriately by children who have sufficient family support and stability to pursue permanent residency in the United States through other, albeit more protracted, procedures. In this case, there has been no need for intervention by the Family Court to ensure that the appellants were placed in a safe and appropriate custody, guardianship, or foster care situation, and the appellants have not been committed to the custody of any individual by any court (cf. Matter of Ashley W. [Verdele F.], 85 AD3d 807 [2011]; Matter of Mohamed B., 83 AD3d 829 [2011]; Matter of Sing W.C. [Sing Y.C.—Wai M.C.], 83 AD3d 84 [2011]; Matter of Alamgir A., 81 AD3d 937 [2011]; Matter of Jisun L. v Young Sun P., 75 AD3d 510 [2010]; Matter of Trudy-Ann W. v Joan W., 73 AD3d 793 [2010]).

While the appellants met all of the other requirements for SIJS, the Family Court correctly determined that the dependency requirement had not been satisfied. A child becomes dependent upon a juvenile court when the court accepts jurisdiction over the custody of that child, irrespective of whether the child has been placed in foster care or a guardianship situation (see In re Menjivar, File A 70 117 167 [INS Administrative Appeals Unit, Dec. 27, 1994]). The Family Court has only granted applications for SIJS special findings where dependency upon the court was established by way of guardianship, adoption, or custody. The cases cited by the appellants in support of their motion only addressed matters involving guardianship or custody (see e.g. Matter of Alamgir A., 81 AD3d at 938; Matter of Jisun L. v Young Sun P., 75 AD3d at 511; Matter of Trudy-Ann W. v Joan W., 73 AD3d at 794).

The appellants assert that their case is analogous to guardianship cases because, in a child support case, the child is

"dependent upon the Family Court for his [or her] very maintenance and survival . . . [W]here the parent fails to live up to [the duty of financial support], the child is dependent upon the court to intervene and order the absent parent to fulfill [his or] her duty to provide [his or] her child with what [he or] she is able."

They maintain that while they were not themselves litigants in a court proceeding, the fact that they were the subject of a court proceeding determining their future financial welfare made them dependent upon the juvenile court. However, as the Family Court correctly noted, "[a] child support application does not address custody issues, rather it addresses a parent's failure to pay child support to the custodial parent."

This Court has set the appropriate standards for dependency on the juvenile court in its prior decisions addressing guardianship and adoption proceedings (*see Matter of Ashley W. [Verdele F.]*, 85 AD3d at 809; *Matter of Mohamed B.*, 83 AD3d at 831-832; *Matter of Sing W.C. [Sing Y.C.—Wai M.C.]*, 83 AD3d at 86; *Matter of Alamgir A.*, 81 AD3d at 939-940; *Matter of Jisun L. v Young Sun P.*, 75 AD3d at 511-512; *Matter of Emma M.*, 74 AD3d 968, 969-970 [2010]; *Matter of Trudy-Ann W. v Joan W.*, 73 AD3d at 795-796). Proceedings for child support involve litigation between the parents regarding the required financial responsibility each parent has with respect to the child (*see* Family Ct Act § 413 [1] [a]). There are no determinations in a child support proceeding commenced pursuant to Family Court Act § 413 that relate to the actual guardianship and custody of the child.

While the appellants argue that this distinction creates a categorical limitation contrary to congressional intent, this is not the case. Courts are not to legislate under the guise of creative interpretation or construction not consistent with the plain and ordinary usage and meaning of the statutory language (*see Hartford Underwriters Ins. Co. v Union Planters Bank, N.A.*, 530 US 1, 10 [2000]; *Park 'N Fly, Inc. v Dollar Park & Fly, Inc.*, 469 US 189, 194 [1985]). We are constrained to read and give effect to the law as it was written in accordance with the plain meaning of the words used by Congress, not as we may think it should have been written (*see William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh*, 99 AD3d 270, 275-276 [2012]; *Puello v Bureau of Citizenship & Immigration Servs.*, 511 F3d 324, 327 [2d Cir 2007]).

Finally, we observe that allowing Family Court proceedings which are not related to custody and guardianship matters to serve as a vehicle for obtaining SIJS special findings would not further the underlying policies behind the SIJS scheme, i.e., to protect abused, neglected, and abandoned immigrant children, and would also risk opening the door to abuse of the SIJS process.

Accordingly, the orders dated January 4, 2012, are affirmed insofar as appealed from. The appeals from the orders dated December 20, 2011, are dismissed, as those orders were superseded by the orders dated January 4, 2012, made, in effect, upon reargument.

ENG, P.J., DILLON and LOTT, JJ., concur.

Ordered that the appeals from the orders dated December 20, 2011, are dismissed, without costs or disbursements, as those orders were superseded by the orders dated January 4, 2012, made, in effect, upon reargument; and it is further,

Ordered that the orders dated January 4, 2012, are affirmed insofar as appealed from, without costs or disbursements.