# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-1412

In re: Guardianship of Jose Maria Chimborazo Guaman

**Filed May 16, 2016**
**Reversed and remanded**
**Hooten, Judge**

Hennepin County District Court
File No. 27-GC-PR-15-120

Stephanie A. Morales, The Bortel Firm, LLC, Minneapolis, Minnesota (for appellant guardian)

Vincent J. Courtney, Courtney & Courtney, St. Paul, Minnesota (for ward)

Considered and decided by Larkin, Presiding Judge; Hooten, Judge; and Kalitowski, Judge.[*]

## S Y L L A B U S

I. A probate court is authorized to make special immigrant juvenile findings in a guardianship proceeding.

II. A probate court abuses its discretion by declining to consider a request for special immigrant juvenile findings in a guardianship proceeding when the record supports the appointment of a guardian and contains evidence as to each potential special immigrant juvenile finding.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

# OPINION

**HOOTEN**, Judge

In this guardianship appeal, appellant guardian argues that the probate court abused its discretion by not making additional findings for purposes of the ward's proposed application under federal law for special immigrant juvenile (SIJ) status. We reverse and remand.

## FACTS

On March 13, 2015, appellant Nube Galarza Gonzalez (appellant) petitioned to be appointed the guardian of ward Jose Maria Chimborazo Guaman (Jose). Appellant is a friend of Jose's sister.

In her petition, appellant alleged the following. Jose was born in Ecuador on March 19, 1996. His family was very poor and frequently did not have enough food to eat. Jose's mother physically and emotionally abused him during his childhood, including one incident when she beat him severely when he was eight or nine years old. At the age of 17, Jose witnessed his father's murder, which caused him "severe trauma and psychological distress." In 2014, shortly after turning 18 years old, Jose fled to the United States in order "to escape memories of his father's murder, his abusive mother, and his father's murderers who continued to threaten [him]." Appellant claimed that (1) as a result of Jose's history of abuse and trauma, he has "limited cognitive capabilities" and is an "incapacitated person"; (2) it is in Jose's best interests to remain in the United States because if he were to return to Ecuador, he would be subjected to his mother's abuse and to the violence of those who murdered his father; and (3) Jose needs a guardian because he

2

lacks the ability to make important decisions, to be independent and self-supporting, to meet his basic needs, and to protect himself from harm. Appellant also requested that the probate court, in its order, make immigration-related findings that would allow Jose to apply for SIJ status with the United States Citizenship and Immigration Services (USCIS).

In support of her petition, appellant submitted a report completed by a licensed psychologist who conducted a psychological evaluation of Jose on December 8, 2014. The purpose of the evaluation was to determine Jose's "current level of cognitive, emotional, and psychological [functioning] and to assess his daily functioning capabilities." During the diagnostic interview, Jose reported that his mother severely beat him when he was eight or nine years old by striking him repeatedly on the head with her hands and with blunt objects. Consistent with these alleged beatings, the psychologist observed "three prominent bumps" on Jose's head. Jose also described in detail the brutal murder of his father at the hands of several men, which Jose witnessed from a distance. Jose stated that his father's murderers threatened to kill him as well, but he was able to escape. He stated that if he had decided to stay in Ecuador, he believes that they would have killed him. The psychologist opined that Jose "demonstrated limited insight and judgment in a number of ways, as evidenced by a handful of instances [in] which he verbalized highly concrete and/or notably naïve statements." Jose's full-scale IQ score was 60, which placed him in the extremely low range of functioning. The psychologist concluded that Jose "has an enduring need for assistance, supervision, and support from a competent, non-abusive, adult caregiver at this time."

A hearing was held on the petition. Appellant testified consistently with her petition and stated that Jose needs a guardian because he lacks maturity, cannot provide for himself or manage his own affairs, and is vulnerable to harm. The probate court questioned Jose, who stated that he needs someone to help him make decisions and requested that appellant be appointed as his guardian.

The probate court issued an order appointing appellant as Jose's limited guardian, concluding that Jose "is an incapacitated person whose needs cannot be met by less restrictive means." The probate court's order gave appellant the power and duty to consent to medical care on behalf of Jose, to contract on his behalf, to exercise supervision over him, and to apply on his behalf "for any assistance, services, or benefits available to [him] through any unit of government." The order did not address appellant's request for SIJ findings.

Appellant filed a motion for additional findings, again requesting that the probate court make SIJ findings. Jose submitted an affidavit in support of the motion, in which he again described his mother's abuse, his father's murder, and the threats to his life by the men who killed his father. Jose's sister also submitted an affidavit, in which she stated that she witnessed her mother physically abuse Jose "many times."

The probate court denied the motion, finding that it was "not appropriate for the probate court, in a guardianship proceeding, to make findings specifically for immigration purposes." The probate court also found that the requested SIJ findings were "outside the requirements of guardianship law and what is appropriate for an underlying petition for guardianship." While the probate court acknowledged that it "technically ha[d] the

4

authority" to make SIJ findings, it concluded that it was not "proper to add specific findings unrelated to what was ordered."

Appellant filed this appeal on September 1, 2015. Appellant's counsel received a notice, dated September 1, setting a removal hearing for Jose in immigration court on January 15, 2016.

**ISSUES**

I.      Is a probate court authorized to make SIJ findings in a guardianship proceeding?

II.      Does a probate court abuse its discretion by declining to consider a request for SIJ findings in a guardianship proceeding when the record supports the appointment of a guardian and contains evidence as to each potential SIJ finding?

III.      Should this court remand the case to a different probate court judge?

**ANALYSIS**

**I.**

SIJ status provides a means for abused, neglected, and abandoned immigrant youth to obtain lawful permanent residency and a path to United States citizenship under federal law. *See* 8 U.S.C. §§ 1101(a)(27)(J) (defining SIJ status), 1153(b)(4) (2012) (establishing annual immigrant-visa allotment for those with SIJ status and others); *see also In re Y.M.*, 144 Cal. Rptr. 3d 54, 72 (Cal. Ct. App. 2012); *In re J.J.X.C.*, 734 S.E.2d 120, 123 (Ga. Ct. App. 2012). An immigrant need not be a minor to apply for SIJ status, but must be under

21 years of age and unmarried when he or she files an application.[1]  *See* 8 C.F.R. § 204.11(c) (2016).  When applying for SIJ status, applicants must submit an order from a juvenile or state court finding that (1) the immigrant either "has been declared dependent on a juvenile court," or has been placed in the custody of a state agency or department or an individual or entity "appointed by a [s]tate or juvenile court"; (2) the immigrant's reunification with one or both parents "is not viable due to abuse, neglect, abandonment, or a similar basis found under [s]tate law"; and (3) it would not be in the immigrant's best interests to return to his or her country of origin.  8 U.S.C. § 1101(a)(27)(J)(i)–(ii); *see* 8 C.F.R. § 204.11 (2016).[2]

Congress charged state courts with making SIJ findings because it "recogniz[ed] that juvenile courts have particularized training and expertise in the area of child welfare and abuse, which places them in the best position to make determinations on the best interests of the child and potential for family reunification."  *In re Hei Ting C.*, 969 N.Y.S.2d 150, 152 (N.Y. App. Div. 2013) (quotation omitted); *see also J.J.X.C.*, 734 S.E.2d at 124.  SIJ findings are not immigration findings per se.  They are immigration-related factual findings that pertain to abuse, neglect, abandonment, parental reunification, and the immigrant's interest in returning to his or her country of origin.  8 U.S.C. § 1101(a)(27)(J)(i)–(ii).  SIJ findings by a state court do not bestow any immigration status on SIJ applicants.  Rather, these predicate findings simply allow an immigrant to apply for

---

[1] Jose will turn 21 years of age on March 19, 2017.
[2] The federal regulation that implements the SIJ statute, 8 C.F.R. § 204.11, has not yet been updated to reflect the statute's amendment in 2008.

6

SIJ status. If an application is submitted, USCIS then determines whether the applicant meets the requirements for SIJ status under federal law. *Simbaina v. Bunay*, 109 A.3d 191, 197 (Md. Ct. Spec. App. 2015); *see* 8 C.F.R. § 204.11.

The language of the SIJ statute indicates that Congress intended for SIJ findings to be available in juvenile and guardianship proceedings involving individuals under 21 years of age. The relevant federal statute expressly contemplates the entry of such findings when an immigrant has been declared dependent on a juvenile court (as in child-protection proceedings), has been placed in the custody of a state agency or department (as in juvenile-delinquency proceedings), or has been placed in the custody of an individual or entity "by a [s]tate or juvenile court" (as in guardianship proceedings). *See* 8 U.S.C. § 1101(a)(27)(J)(i).[3]

Under Minnesota law, the probate court may appoint a guardian for an individual if it finds, by clear and convincing evidence, that the individual is an "incapacitated person" and that the individual's "needs cannot be met by less restrictive means." Minn. Stat. § 524.5-310(a) (2014). In addition, the probate court "may make any other order that is in the best interests of the ward or may grant other appropriate relief." Minn. Stat. § 524.5-317(b) (2014); *see also Schmidt v. Hebeisen*, 347 N.W.2d 62, 64 (Minn. App. 1984)

---

[3] Prior to 2008, the SIJ statute required that the juvenile immigrant be deemed eligible for "long-term foster care." 8 U.S.C. § 1101(a)(27)(J)(i) (2006). The statute was amended in 2008 "to expand eligibility to include those immigrant children who had been placed in the custody of an individual or entity appointed by a state or juvenile court." *Simbaina*, 109 A.3d 191 at 196 (quotation omitted); *see also In re Erick M.*, 820 N.W.2d 639, 645 (Neb. 2012) ("[The 2008 amendment] expanded the pool of juvenile aliens who could apply for SIJ status.").

(stating that in a guardianship proceeding, "the ward's best interest is the [probate] court's paramount concern"). Given the broad scope of the probate court's authority to act in the best interests of the ward, we conclude that a probate court is authorized to make SIJ findings in a guardianship proceeding.

## II.

Appellant argues that the probate court abused its discretion by declining to consider her request for SIJ findings. She contends that SIJ findings are "necessary . . . for the effective functioning of [Jose's] guardianship." She argues that, by not considering her request for SIJ findings, the probate court "undermine[d] the purpose of the guardianship, potentially making it moot, and impede[d] the guardian in carrying out her appointed responsibilities." She also argues that the probate court "contravened federal law, eviscerat[ed] the purpose and function" of the SIJ statute, and "thwarted Congressional intent."

Upon the timely motion of a party, the district court may amend its findings or make additional findings. Minn. R. Civ. P. 52.02. We review the district court's denial of a motion for amended or additional findings for an abuse of discretion. *See Zander v. Zander*, 720 N.W.2d 360, 364 (Minn. App. 2006), *review denied* (Minn. Nov. 14, 2006). "The district court abuses its discretion by improperly applying the law." *In re Guardianship of DeYoung*, 801 N.W.2d 211, 216 (Minn. App. 2011).

Other appellate courts have held that state district courts are required to consider a request for SIJ findings and, if supported by the record, to make SIJ findings in juvenile and other matters involving unmarried immigrants under the age of 21. *See, e.g.*, *Y.M.*,

8

144 Cal. Rptr. 3d at 73; *J.J.X.C.*, 734 S.E.2d at 124; *Simbaina*, 109 A.3d at 199 ("[C]ourts around the country hear SIJ evidence in a variety of settings, including custody proceedings, adoption petitions and probate issues."); *see also In re Mohamed B.*, 921 N.Y.S.2d 145, 146–47 (N.Y. App. Div. 2011) (making SIJ findings on appeal in guardianship proceeding, where probate court erroneously failed to do so). The SIJ statute "employs a unique hybrid procedure that directs the collaboration of state and federal systems." *Hei Ting C.*, 969 N.Y.S.2d at 152. This collaborative procedure is impaired when state courts fail to consider a request for SIJ findings.

Here, because the record supports the appointment of a guardian and contains evidence as to each potential SIJ finding, we conclude that the probate court abused its discretion by declining to consider appellant's request for SIJ findings. *See Y.M.*, 144 Cal. Rptr. 3d at 73 ("Because [the juvenile] was potentially eligible for SIJ status, she was entitled to a hearing where the juvenile court would determine whether findings required for SIJ status existed."). We reverse the probate court's order denying appellant's motion for additional findings and remand for the probate court to consider whether there is a factual basis for making SIJ findings and, if so, to make SIJ findings. In its order, the probate court must make specific and detailed findings, based on Minnesota law, addressing each of the three SIJ-related issues: dependency/custody, parental reunification, and the best interests of the ward. In its discretion, the probate court may reopen the record to determine whether there is a factual basis for making SIJ findings.

## III.

Appellant requests that this court remand the case to a different probate court judge, alleging that the judge who heard this matter "has a predisposition against involvement in [SIJ] cases." This court has previously declined to address a request to remove a district court judge absent prior consideration of the request by the district court. *Ag Servs. of Am., Inc. v. Schroeder*, 693 N.W.2d 227, 236 (Minn. App. 2005). Moreover, appellant has not made "an affirmative showing of prejudice on the part of the judge." Minn. R. Civ. P. 63.03; *see In re Welfare of D.L.*, 479 N.W.2d 408, 415 (Minn. App. 1991) (noting that disqualifying bias or prejudice "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from her participation in the case"), *aff'd*, 486 N.W.2d 375 (Minn. 1992). While the probate court judge was mistaken regarding the probate court's duty to consider appellant's request for SIJ findings, nothing in the record indicates the presence of extrajudicial bias or prejudice.

## DECISION

Because the probate court abused its discretion by declining to consider appellant's request for SIJ findings, we reverse and remand for the probate court to consider whether there is a factual basis for making SIJ findings and, if so, to make SIJ findings.

**Reversed and remanded.**