Matter of Keanu S. (2018 NY Slip Op 06918)





Matter of Keanu S.


2018 NY Slip Op 06918


Decided on October 17, 2018


Appellate Division, Second Department


Rivera, J.P., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 17, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
SHERI S. ROMAN
HECTOR D. LASALLE
BETSY BARROS, JJ.


2017-07313
 (Docket Nos. D-15224-15/16A, D-10564-16)

[*1]In the Matter of Keanu S. (Anonymous), appellant.



APPEAL by Keanu S., in a proceeding pursuant to Family Court Act article 3, from an order of the Family Court (Robert I. Caloras J.), dated June 7, 2017, and entered in Queens County. The order denied the renewed motion of Keanu S. for the issuance of an order declaring that he is dependent on the Family Court and making specific findings so as to enable him to petition the United States Citizenship and Immigration Services for special immigrant juvenile status pursuant to 8 USC § 1101(a)(27)(J).



The Legal Aid Society, New York, NY (Tamara A. Steckler and Marcia Egger of counsel), for appellant.



RIVERA, J.P.


OPINION & ORDER
On the instant appeal, this Court is presented with the issue of whether the Family Court properly denied the renewed motion of Keanu S. (hereinafter the child) for the issuance of an order declaring that he is dependent on the Family Court and making specific findings so as to enable him to petition the United States Citizenship and Immigration Services for special immigrant juvenile status pursuant to 8 USC § 1101(a)(27)(J). Specifically, the Family Court rejected the child's contention that he was dependent upon a juvenile court, within the meaning of 8 USC § 1101(a)(27)(J)(i), by virtue of his placement in the custody of the Commissioner of Social Services of the City of New York following his adjudication as a juvenile delinquent. For the reasons that follow, we agree with the Family Court's determination and conclude that such a placement does not satisfy the requirement of dependency under the statute.
I. The Juvenile Delinquency Acts
On April 22, 2015, the child, while a high school student, punched another student in the face, causing serious injuries, which included two jaw fractures. For these acts, on July 28, 2015, the presentment agency filed a juvenile delinquency petition, charging the child with committing acts which, if committed by an adult, would constitute the crimes of assault in the second and third degrees. In an order of disposition dated November 2, 2015, the Family Court adjudicated the child a juvenile delinquent and placed him on probation for a period of 12 months.
On January 29, 2016, while under probation supervision, the child and three others punched and kicked another victim, causing serious injuries to the victim, including a laceration on his forehead, and took that victim's jacket, which contained his cell phone. The child was charged, inter alia, with committing acts, which if committed by an adult, would constitute the crimes of assault in the second degree and robbery in the second degree.
On May 19, 2016, the Department of Probation filed a petition alleging that based on the incident on January 29, 2016, and his failure to attend school regularly, the child willfully violated the terms of his probation.
In June 2016, the Family Court remanded the child to the Administration for Children's Services of the City of New York for detention pending further proceedings.
In an order dated July 13, 2016, the Family Court vacated the order of disposition [*2]dated November 2, 2015, and placed the child in the custody of the Commissioner of Social Services of the City of New York for a period of 12 months in "non-secure placement."
II. Motion for Order of Specific Findings
On March 10, 2017, the child moved for the issuance of an order making the requisite declaration and specific findings so as to enable him to petition for special immigrant juvenile status (hereinafter SIJS) pursuant to 8 USC § 1101(a)(27)(J).
In a supporting affidavit, the child averred that he was born in Jamaica in May 2000. The child stated that he was 16 years old and unmarried. The child indicated that he lived with his father in Jamaica after the mother "left the home when I was a baby," and was raised by his aunts and his father. According to the child, the father was murdered when the child was 11 years old.
The child stated that "[t]he people that cause[d] my father's death also threatened to hurt me." The child came to the United States when he was 12 years old. In addition, he stated that he had no contact with the mother since she left the family and he did not know where she lived.
The child indicated that, at the time of his motion, he lived in a facility run by Sheltering Arms Child and Family Services, "an organization contracted to provide services by the New York City Administration for Children's Services," due to his adjudication as a juvenile delinquent. Further, he stated that his placement was to continue until December 2, 2017. The child contended that "[t]he only family that has taken care of me lives in the United States," and that he believed he would be "in danger" if he returned to Jamaica.
In a supporting affirmation, the attorney for the child argued that the dependency requirement of 8 UCS § 1101(a)(27)(J)(i) should be deemed satisfied by the child's placement in the custody of the Commissioner of Social Services of the City of New York.
In an order dated March 20, 2017, the Family Court denied the motion, with leave to renew, upon the submission of additional papers. Thereafter, the child made a renewed motion.
III. The Order Appealed From
In an order dated June 7, 2017, the Family Court denied the child's renewed motion, stating, in pertinent part:
"This court declines to adopt [the child's] position, and finds that a placement in a juvenile delinquency matter does not satisfy the dependency requirement necessary for a SIJS finding. . . .
"First, there exists no Appellate authority in this State to support a finding that a juvenile delinquency proceeding constitutes a dependency upon the Family Court for [specific] findings in a SIJS matter. Second, such determination would circumvent the legislative intent behind the SIJS statute, and would not further the underlying policies or legislative intent of the SIJS statute. Expanding SIJS status to include juvenile delinquency matters would put this court in the untenable position of rewarding immigrant children for committing acts, which if done by an adult, would constitute a crime under the Penal Law. A reward not available to a law abiding immigrant child, and an intent this court is not willing to ascribe to Congress.
"Significantly, under the Illegal Immigration Reform and Immigrant Responsibility Act an adult who is not a U.S. citizen and pleads guilty to certain criminal offenses may be subject to mandatory deportation. Moreover, Criminal Procedure Law § 220.50(7) mandates that a court advise non-citizen defendants of the deportation consequences of his or her plea to a felony offense. It is inconceivable that Congress would seek to deport an adult criminal, yet give special immigrant status to a juvenile delinquent. This court finds that to grant [the child's] request, simply because he is under this court's placement order, would disparage the very laudable intent of 8 [USC § ] 1101(a)(27)([J]). Clearly, the facts and circumstances of [the child's] history do not fit within the legislative scheme of the SIJS statute, which is concerned with providing special protection to immigrant children who have experienced maltreatment in their families. [The child's] placement in a non-secure facility stemmed from his admission to an assault in the second degree. Granting a SIJS finding to [the child] is not only contrary to the intent of the SIJS statute, but also does not promote the legislative intent behind Article 3 of the Family Court which did not envision respondents deriving a benefit from their bad acts. For these [*3]reasons, this court declines to expand the definition of dependency upon the court for a SIJS finding to include juvenile delinquency placements" (citations omitted).
IV. Legal Analysis
The legislative history of SIJS was set forth by this Court in Matter of Hei Ting C. (109 AD3d 100, 102-103). Briefly, in 1990, Congress created SIJS to address the issue of undocumented and unaccompanied children (see id. at 102). "As originally enacted, this legislation defined an eligible immigrant as being one who has been declared dependent on a juvenile court located in the United States and has been deemed eligible by that court for long-term foster-care" (id. at 102-103 [internal quotation marks omitted]). The legislation also required a determination by the court that it would not be in the immigrant's best interests to return to his or her native country (see id. at 103). In 1997, Congress added the further requirement that the juvenile court find the child dependent upon the court "due to abuse, neglect, or abandonment," which limited the beneficiaries of the provision "to those juveniles for whom it was created" (id. [internal quotation marks omitted]).
In 2008, Congress again amended the SIJS provisions by removing the requirement that the child be deemed eligible for long-term foster care due to abuse, neglect, or abandonment, and replacing it with a requirement that the juvenile court find that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law" (id. [internal quotation marks omitted]). Following the 2008 amendments, the United States Department of Homeland Security issued a memorandum explaining, inter alia, that the new language added to the definition of "Special Immigrant Juvenile" meant that "a petition filed by an alien on whose behalf a juvenile court appointed a guardian may now be eligible" (id., citing
Memorandum by Donald Neufeld and Pearl Chang, Trafficking Victims Protection Reauthorization Act of 2008: Special Immigrant Juvenile Status Provisions [Mar. 24, 2009]).
Accordingly, pursuant to 8 USC § 1101(a)(27)(J), as amended by the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (Pub L 110-457, 122 US Stat 5044), and 8 CFR 204.11, a "special immigrant" is a resident alien who, inter alia, is under 21 years of age, is unmarried, and has been legally committed to, or placed under the custody of, an individual appointed by a state or juvenile court. Additionally, for a juvenile to qualify for SIJS, a court must find that reunification of the juvenile with one or both of the juvenile's parents is not viable due to parental abuse, neglect, abandonment, or a similar basis found under state law (see 8 USC § 1101[a][27][J][i]; Matter of Castellanos v Recarte, 142 AD3d 552, 553; Matter of Marisol N.H., 115 AD3d 185, 188; Matter of Maria P.E.A. v Sergio A.G.G., 111 AD3d 619, 620), and that it would not be in the juvenile's best interests to be returned to his or her native country or country of last habitual residence (see 8 USC § 1101[a][27][J][ii]; 8 CFR 204.11[c][6]; Matter of Maria P.E.A. v Sergio A.G.G., 111 AD3d at 620; Matter of Trudy-Ann W. v Joan W., 73 AD3d 793, 795).
On this appeal, the child urges this Court to find that he has been legally committed to, or placed under the custody of, an individual appointed by a state or juvenile court for SIJS purposes by virtue of his juvenile delinquency adjudication. This Court declines to do so. We agree with the Family Court that the dependency requirement has not been satisfied herein.
The SIJS scheme has laudable purposes, worthy goals, and lofty ideals. This immigration relief affords a pathway to lawful permanent residency and citizenship to undocumented children (see Matter of Castellanos v Recarte, 142 AD3d at 553). It is an important piece of legislation that advances much-needed support and special protections to vulnerable persons. However, this reform has requirements that cannot be obviated or circumvented.
"[T]he impetus behind the enactment of the SIJS scheme is to protect a child who is abused, abandoned, or neglected and to provide him or her with an expedited immigration process" (Matter of Hei Ting C., 109 AD3d at 106). As previously observed by this Court, intended beneficiaries of the SIJS provisions are " those juveniles for whom it was created, namely abandoned, neglected, or abused children'" (Matter of Marcelina M.-G. v Israel S., 112 AD3d 100, 108, quoting HR Rep 105-405, 105th Cong, 1st Sess at 130, reprinted in 1997 US Code Cong & Admin News at 2941, 2954; see Matter of Fifo v Fifo, 127 AD3d 748, 750-751; Matter of Hei Ting C., 109 AD3d at 103). Applications for SIJS specific findings have generally been granted where

dependency upon the court was established by way of guardianship, adoption, or custody (see Matter of Hei Ting C., 109 AD3d at 106). In addition, this Court has recognized that, under proper circumstances, a child involved in a family offense proceeding involving allegations of abuse or [*4]neglect may properly be the subject of such a determination as an intended beneficiary of the SIJS provisions (see Matter of Fifo v Fifo, 127 AD3d at 751).
We hold that the child herein is not an intended beneficiary of the SIJS provisions. He was not placed in the custody of the Commissioner of Social Services due to his status as an abused, neglected, or abandoned child. Instead, he was placed in the custody of the Commissioner of Social Services after committing acts which, if committed by an adult, would have constituted serious crimes. His violent acts and misconduct have resulted in painful and terrible consequences to his victims. In fact, even while under probation, his encounters with the law persisted. In effect, the child attempts to utilize his wrongdoings and the resultant juvenile delinquency adjudication as a conduit or a vehicle to meet the dependency requirement for SIJS. Such a determination is in conflict with the primary intent of Congress in enacting the SIJS scheme, namely, to protect abused, neglected, and abandoned immigrant children. We cannot fathom that Congress envisioned, intended, or proposed that a child could satisfy this requirement by committing acts which, if committed by adults, would constitute crimes, so as to warrant a court's involvement or the legal commitment to an individual appointed by a state or juvenile court. To hold otherwise would mean that similarly situated children who do not resort to committing such acts, but rather, abide by rules, would not meet the dependency requirement for the issuance of an order making specific findings that would allow them to apply to the United States Citizenship and Immigration Services for SIJS.
Turning to the contentions of our dissenting colleague, we respectfully disagree that the dependency requirement was satisfied and take this opportunity to clarify certain points asserted in the dissenting opinion.
First, contrary to the dissent's assertion, we do not rely upon "dicta" adopted from Matter of Hei Ting C. (109 AD3d 100) in support of our holding herein. Matter of Hei Ting C., wherein this Court discussed at length the dependency requirement of 8 USC § 1101(a)(27)(J)(i), is binding authority and precedent. We rely upon the disposition and instruction delineated in that case, as we must as a court of precedent (see generally People v Garvin, 30 NY3d 174, 185 [under the doctrine of stare decisis, "common-law decisions should stand as precedents for guidance in cases arising in the future and that a rule of law once decided by a court, will generally be followed in subsequent cases presenting the same legal problem" (internal quotation marks omitted)]).
Second, to the extent that the dissent discusses opinions from lower courts (see e.g. Matter of Jose H., 54 Misc 3d 324 [Sup Ct, Nassau County]; Matter of Mario S., 38 Misc 3d 444 [Fam Ct, Queens County]), as well as cases rendered by Minnesota and California courts (see e.g. In re Guardianship of Guaman, 879 NW2d 668 [Minn Ct App]; In re Israel O., 233 Cal App 4th 279, 182 Cal Rptr 3d 548; Leslie H. v Superior Court, 224 Cal App 4th 340, 168 Cal Rptr 3d 729), which may hold otherwise, we decline to adopt the holdings in those cases.
Third, certain provisions of the Family Court Act addressing dispositional orders in juvenile delinquency proceedings (see e.g. Family Ct Act §§ 352.1, 352.2), which are referred to by the dissent, are not relevant to the issue at hand, which involves SIJS. On a similar note, contrary to the dissent's suggestion, the placement of a child in the "custody" of the Commissioner of Social Services in a juvenile delinquency proceeding is not the same as a "custody" determination in the context of a child custody proceeding pursuant to Family Court Act article 6.
Fourth, we have not engaged in any "strained" analysis, as posited by the dissent. "In interpreting a statute, our primary consideration is to discern and give effect to the Legislature's intention'" (People v Silburn, 31 NY3d 144, 155, quoting Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d 106, 120). That is exactly what we have done here.
This Court has previously affirmed orders denying motions for specific findings so as to enable children to petition for SIJS where one of the requirements has not been established (see e.g. Matter of Goran S., 152 AD3d 698; Matter of Amsi H.D.O. [Maria L.R.—Cesiah O.D.], 152 AD3d 524; Matter of Oscar J.L.J. [Segundo R.L.T.], 151 AD3d 969; Matter of Christian P.S.-A. [Humberto R.S.-B.—Laura S.A.-C.], 148 AD3d 1032; Matter of Hei Ting C., 109 AD3d at 102). Where, as here, the dependency requirement, which is a prerequisite for the issuance of an order making a declaration and specific findings so as to enable a child to petition for SIJS is lacking, a denial is similarly warranted.
The child's remaining contentions either are without merit or need not be reached in light of our determination.
Accordingly, we agree with the Family Court's determination to deny the child's [*5]renewed motion, and the order is affirmed.
ROMAN and LASALLE, JJ., concur.
ORDERED that the order is affirmed, without costs or disbursements.
BARROS, J., dissents, and votes to reverse the order, on the law, and grant the child's renewed motion for the issuance of an order declaring that the child is dependent on the Family Court and making specific findings so as to enable the child to petition the United States Citizenship and Immigration Services for special immigrant juvenile status pursuant to 8 USC § 1101(a)(27)(J), with the following memorandum:
The majority's conclusion that an abused, neglected, or abandoned child who is placed in the custody of the Commissioner of Social Services by a juvenile court due to a juvenile delinquency adjudication is not a dependent child within the meaning of 8 USC § 1101(a)(27)(J)(i) is not supported by the plain language and intent of the statute, and disregards federal immigration policy as reflected in the United States Citizenship and Immigration Services manual, and state policy as reflected in the Family Court Act.
Notably, two thoroughly written and well-reasoned opinions from this State analyzing the federal statute, 8 USC § 1101(a)(27)(J), and the Family Court Act on this issue have concluded that children who are given custodial placements as a result of juvenile delinquency proceedings meet the dependency requirement of 8 USC § 1101(a)(27)(J) (see Matter of Jose H., 54 Misc 3d 324 [Sup Ct, Nassau County]; Matter of Mario S., 38 Misc 3d 444 [Fam Ct, Queens County]). Appellate courts in other states have, likewise, recognized that the federal statute expressly contemplates that children who are placed in the custody of a state agency or department as a result of juvenile delinquency proceedings meet the dependency requirement (see In re Guardianship of Guaman, 879 NW2d 668, 672 [Minn Ct App] ["The relevant federal statute expressly contemplates the entry of such findings when an immigrant has been declared dependent on a juvenile court (as in child-protection proceedings), has been placed in the custody of a state agency or department (as in juvenile delinquency proceedings), or has been placed in the custody of an individual or entity by a state or juvenile court (as in guardianship proceedings)" (emphasis added; internal quotation marks omitted)]; In re Israel O., 233 Cal App 4th 279, 282-283, 182 Cal Rptr 3d 548, 549-550; Leslie H. v Superior Court, 224 Cal App 4th 340, 168 Cal Rptr 3d 729; In re: K. O.-T., 2017 WL 6032588, 2017 Md. App. LEXIS 1206 [Md Ct Spec App, Dec. 6, 2017, No. 2047]). While these authorities do not constitute binding precedent, they are certainly persuasive. For the reasons that follow, I would reverse the order appealed from, and grant the child's renewed motion for an order declaring that the child is dependent on the Family Court and making specific findings so as to enable the child to petition the United States Citizenship and Immigration Services (hereinafter USCIS) for special immigrant juvenile status (hereinafter SIJS) pursuant to 8 USC § 1101(a)(27)(J).
I. Plain Meaning
"The text of a statute is the clearest indicator of legislative intent" (Matter of Avella v City of New York, 29 NY3d 425, 434 [internal quotation marks omitted]). Where the statutory language is unambiguous, we are bound to give effect to its plain meaning, and we may not resort to extrinsic evidence to discover legislative intent (see Makinen v City of New York, 30 NY3d 81, 85). The same principles of statutory construction apply to interpreting federal legislation enacted by Congress (see Ingalls Shipbuilding, Inc. v Director, Office of Workers' Compensation Programs, Dept. of Labor, 519 US 248, 255; United States v Ron Pair Enterprises, Inc., 489 US 235, 240-241; Caminetti v United States, 242 US 470, 485).
A child establishes that he or she is dependent upon the juvenile court under 8 USC § 1101(a)(27)(J) when he or she "has been declared dependent on a juvenile court" or when such juvenile court "has legally committed to, or placed [such child] under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court" (8 USC § 1101[a][27][J][i]).
Here, the recognized "juvenile court" in New York State is the Family Court (see Matter of Hei Ting C., 109 AD3d 100, 105). Thus, in determining whether the child meets the dependency requirement of the statute, we must inquire whether the child has been "declared" dependent upon the Family Court, or whether the Family Court has legally committed or placed the child under the custody of an agency or department of a state, or an individual or entity appointed by a state or the Family Court (see 8 USC § 1101[a][27][J]). In Matter of Hei Ting C., this Court held that "[a] child becomes dependent upon a juvenile court when the court accepts jurisdiction over the custody of that child" (109 AD3d at 106). Thus, here, the child became dependent upon the Family Court when the court accepted jurisdiction over his custody, and placed him with the [*6]Commissioner of Social Services.
The statute, on its face, does not exempt children whose juvenile court custodial placements are the result of juvenile delinquency adjudications. The majority's holding improperly engrafts an exception into the statute "under the guise of creative interpretation or construction not consistent with the plain and ordinary usage and meaning of the statutory language" (id. at 107; see Bender v Jamaica Hospital, 40 NY2d 560; McKinney's Cons Laws of NY, Book 1, Statutes, § 76, Comment ["The function of the courts is to enforce statutes, not to usurp the power of legislation, and to interpret a statute where there is no need for interpretation, to conjecture about or to add to or subtract from words having a definite meaning, or to engraft exceptions where none exist are trespasses by a court upon the legislative domain"]).
II. Federal Immigration Policy
My colleagues in the majority disregard the plain meaning of the statute because they cannot "fathom that Congress envisioned, intended, or proposed that a child could satisfy this [dependency] requirement by committing acts which, if committed by adults, would constitute crimes, so as to warrant a court's involvement or a legal commitment to an individual appointed by a state or juvenile court." However, the majority's speculation as to Congressional intent finds no support in the legislative history, or the publications of the federal agency charged with interpreting and implementing the statute.
The ultimate determination of whether to grant SIJS to a particular juvenile rests with USCIS and its parent agency, the Department of Homeland Security (see Matter of Nelson A.G.-L. [Maria Y.G.S.], 157 AD3d 789). USCIS publishes an online manual setting forth its immigration polices (see USCIS Policy Manual, available at www.uscis.gov/policymanual/HTML/PolicyManual.html [last accessed Oct. 15, 2018]). Under Volume 7, Part F, Chapter 7, entitled "Special Immigrant Juveniles," the manual provides that "[f]indings of juvenile delinquency are not considered criminal convictions for purposes of immigration law"; however, such findings may be "part of a discretionary analysis" in which USCIS will consider such findings on a "case-by-case basis based on the totality of the evidence to determine whether a favorable exercise of discretion is warranted" (see USCIS Policy Manual, Ch. 7, available at www.uscis.gov/policymanual/HTML/PolicyManual-Volume7-PartF-Chapter7.html [last accessed Oct. 15, 2018]).
Notably, the manual recognizes that state courts meeting the definition of a "qualifying juvenile court proceeding" include "delinquency courts" (see USCIS Policy Manual, Ch. 3, available at www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartJ-Chapter3.html#S-A [last accessed Oct. 15, 2018]). If, as asserted by the majority, Congress intended to exclude children adjudicated juvenile delinquents from obtaining SIJS, then it would defy logic for USCIS to include "delinquency courts" in the class of state courts that meet the definition of a qualifying juvenile court proceeding, and for USCIS to consider juvenile delinquency findings in making its ultimate determination on a child's SIJS application.
"[T]he impetus behind the enactment of the SIJS scheme is to protect a child who is abused, abandoned, or neglected and to provide him or her with an expedited immigration process" (Matter of Hei Ting C., 109 AD3d at 106). "The requirement that a child be dependent upon the juvenile court or, alternatively, committed to the custody of an individual appointed by a state or juvenile court, ensures that the process is not employed inappropriately by children who have sufficient family support and stability to pursue permanent residency in the United States through other . . . procedures" (id.) Thus, the SIJS scheme is not undermined by granting specific findings orders to abused, neglected, or abandoned children over whose custody the Family Court has accepted jurisdiction, regardless of whether such jurisdiction was acquired in a juvenile delinquency proceeding or some other Family Court proceeding.
While the majority opinion is concerned about rewarding the child's misconduct by granting him a specific findings order, it overlooks, or disregards, that a specific findings order is not an award of SIJS. The Family Court does not make an immigration determination when it makes the requisite specific findings. Those findings merely allow the eligible child to apply to USCIS for an immigration determination. While the nature and seriousness of a child's misconduct may be a concern to USCIS for the purpose of making its ultimate determination on the SIJS application, it has no bearing on our determination, as the State court, on the child's eligibility to apply.
The majority's conclusion that the granting of a specific findings order to a child adjudicated a juvenile delinquent would deprive a "similarly situated" rule-abiding child of such order is unfounded, since there is no limit to the number of specific findings orders that may be [*7]issued by the Family Court.
III. Equating Juvenile Delinquency with Criminal Conviction
Federal law does not treat children adjudicated as juvenile delinquents as criminal convicts, even for purposes of immigration (see UCIS Policy Manual, Ch. 7, available at www.uscis.gov/policymanual/HTML/PolicyManual-Volume7-PartF-Chapter7.html [last accessed Oct. 15, 2018]). Moreover, it is a well-established State policy that we do not equate children adjudicated as juvenile delinquents with adults convicted of crimes. The basis of a delinquency finding is not the commission of a criminal act, but rather the commission of an act "that would [be] a crime if committed by an adult" (Family Ct Act § 301.2[1]; see Matter of Jose H., 54 Misc 3d at 332). The use of the phrase "that would be a crime if committed by an adult" is not mere semantics, but reflects a strong policy "to protect young persons who have violated the criminal statutes of this State from acquiring the stigma that accompanies a criminal conviction" (People v Gray, 84 NY2d 709, 713) and "ensure[s] that a juvenile delinquency adjudication is not treated as a crime" (Green v Montgomery, 95 NY2d 693, 697).
Despite this well-established policy in both federal and state law to not equate children adjudicated as juvenile delinquents with adults convicted of crimes, the Family Court nonetheless stated that "[i]t is inconceivable that Congress would seek to deport an adult criminal, yet give special immigrant status to a juvenile delinquent." In determining whether, as a matter of statutory construction, the child meets the dependency requirement of the SIJS statute, the majority gives significant weight to the seriousness of the child's misconduct and the "painful and terrible consequences to his victims." Such considerations play no role in our determination whether to grant a specific findings order, but may play a role in the ultimate determination by USCIS to grant SIJS (see Matter of Nelson A.G.-L. [Maria Y.G.S.], 157 AD3d at 790; Matter of Enis A.C.M. [Blanca E.M.—Carlos V.C.P.], 152 AD3d 690, 692). The majority has, in effect, created an immigration consequence to the juvenile delinquency adjudications of abused, neglected, or abandoned children.
Even more troubling, the Court's holding not only bars the child from obtaining a specific findings order, but is so broad that it would preclude neglected, abused, or abandoned children who have committed much less serious misconduct, including graffiti (see Matter of Oscar G., 83 AD3d 468), or marijuana possession (see Matter of Michael I., 309 AD2d 598 [possession of marijuana cigar]), from obtaining a specific findings order. Children who are abused, neglected, or abandoned are presumed to not have sufficient familial support or stability (see Matter of Hei Ting C., 109 AD3d at 106), and, as a result, may become the subject of Family Court proceedings by reason of their misconduct. The misconduct of these children does not make them any less vulnerable than other abused, neglected, or abandoned children over whom the Family Court exercises jurisdiction for custody. The child's misconduct provides the occasion for the Family Court to intervene and protect the child, as well as the public. It is not, however, an occasion for the Family Court to impose an immigration consequence upon them.
IV. "Custody" in Juvenile Delinquency Proceedings
Contrary to the majority's strained analysis, the placement of a child in the custody of the Commissioner of Social Services as a result of a juvenile delinquency adjudication is considered to be a custody determination under the Family Court Act.
"The overriding intent of the juvenile delinquency article is to empower [the] Family Court to intervene and positively impact the lives of troubled young people while protecting the public" (Matter of Robert J., 2 NY3d 339, 346). In the disposition phase of juvenile delinquency proceedings, the Family Court's placement options, as well as the factors that the court must consider in making an appropriate disposition, illustrate how children given placement as a result of a juvenile delinquency adjudication are dependent on the Family Court in the same way as

children given placement as a result of other Family Court proceedings.
Upon adjudicating a child a juvenile delinquent, the Family Court must enter a dispositional order setting forth whether the juvenile requires "supervision, treatment, or confinement" (Family Ct Act § 352.1). "In determining an appropriate order the court shall consider the needs and best interests of the respondent as well as the need for protection of the community" (Family Ct Act § 352.2[2][a]). Family Court Act § 352.2 supplies the Family Court with "a broad array of options," including placement of the child in his or her own home, in foster care, or in a juvenile facility (see Matter of Jose H., 54 Misc 3d at 333). The law generally requires that the court impose the least restrictive placement consistent with the best interests of the child and the safety and needs of the community (see Family Ct Act § 352.2[2]; Matter of Jose H., 54 Misc 3d at 333).
Significantly, in making a dispositional order, the Family Court must consider circumstances impacting the child's living situation, including whether the juvenile's parents abused, neglected, or subjected the child to other "aggravating circumstances" as defined in Family Court Act § 301.2 (see Family Ct Act § 352.2[2][c]). Thus, in the dispositional phase, the Family Court is charged with looking not only at what the child has done, i.e., the conduct that would be a crime if committed by an adult, but also what has been done to the child, i.e., evidence of neglect, abuse, or abandonment.
Therefore, the Family Court is authorized to, and often does, make custody determinations in the dispositional phase of juvenile delinquency proceedings. When the Family Court has exercised its jurisdiction and made such placements, as here, the child is considered to be "dependent" on the Family Court for the purpose of SIJS (see Matter of Hei Ting C., 109 AD3d at 106).
The case relied upon by the majority as binding precedent, Matter of Hei Ting C., does not support its holding, and is factually inapposite. There, parents were disputing their respective financial obligations toward their children. There was no issue of guardianship or custody over the children (see id. at 107), and "no need for intervention by the Family Court to ensure that the [children] were placed in a safe and appropriate custody, guardianship, or foster care situation" (id. at 106). In contrast, here, the Family Court committed the child's custody to the Commissioner of Social Services. In so doing, the Family Court necessarily determined that the child required intervention to ensure, inter alia, that the child was placed in a safe and appropriate situation.
V. Independent Factual Review
Based upon our independent factual review, I would conclude that the child meets all of the remaining requirements for a specific findings order. Reunification of the child with one or two parents is not viable because the father was murdered in Jamaica, and the mother abandoned him. The record establishes that, given the circumstances involving the murder of the child's father in Jamaica, the child's lack of familial support in Jamaica, and the child's familial support in this country, it would not be in the child's best interests to be returned to Jamaica. It is undisputed that the child was under 21 years old and unmarried at the time of his renewed motion. Since the child meets all of the requirements for a specific findings order, I vote to reverse the order appealed from, and grant the renewed motion (see e.g. Matter of Nelson A.G.-L. [Maria Y.G.S.], 157 AD3d at 790-791; Matter of Enis A.C.M. [Blanca E.M.—Carlos V.C.P.], 152 AD3d at 692), and thus, leave the ultimate determination of whether the child should be granted SIJS to the appropriate federal agency, USCIS.
VI. Summary
The order appealed from should be reversed. The plain language of the federal statute (8 USC § 1101[a][27][J]), in conjunction with this State's Family Court Act, establishes that the child meets the dependency requirement. Exercising our independent factual review power, I would grant the child's renewed motion for a specific findings order.
ENTER:
Aprilanne Agostino
Clerk of the Court